## PEOPLE v TUMPKIN

1. CRIMINAL LAW—NEW TRIAL—EFFECTIVE ASSISTANCE OF COUNSEL—SERIOUS MISTAKE.

   A new trial will be granted in a criminal case where a defendant asserts that a serious mistake on the part of the defense counsel resulted in an unfair trial only when it appears that the new trial will in all likelihood result in an acquittal.

2. CRIMINAL LAW—NEW TRIAL—PLEA OF INSANITY—EFFECTIVE ASSISTANCE OF COUNSEL—SERIOUS MISTAKE.

   A defendant's counsel made a serious mistake in not employing the defense of insanity to a charge of armed robbery and the quantity of evidence available before trial tended to show that an insanity defense would have been meritorious, a lack of a sound reason for failing to present such defense appeared, and a new trial is mandated where a defendant had been initially adjudicated incompetent to stand trial, defense counsel knew that the defendant had a history of mental instability including a period of hospitalization for mental difficulty, that he had attempted suicide, was unresponsive to questions part of the time, that his father had filed a petition to have defendant declared mentally incompetent, that a report from the Center for Forensic Psychiatry diagnosed the defendant as having "schizophrenic reaction, chronic undifferentiated type" and stated among other things that the defendant was "psychotic and his holds on reality are very fragile", and that he showed inappropriate laughter numerous times, stated he heard voices, and suffered from religious delusions.

Appeal from Monroe, James J. Kelley, Jr., J. Submitted Division 2 June 20, 1973, at Lansing. (Docket No. 16152.) Decided August 30, 1973.

Robert L. Tumpkin was convicted of armed robbery. Defendant appeals. Reversed and remanded.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 58 Am Jur 2d, New Trial §§ 158–163.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *James J. Rostash,* Prosecuting Attorney, for the people.

*Thomas D. Ready,* for defendant on appeal.

Before: T. M. BURNS, P. J., and McGREGOR and VAN VALKENBURG,* JJ.

T. M. BURNS, P. J. Defendant was found guilty by a jury of armed robbery.[1] He was sentenced to a term of from 25 to 50 years imprisonment and appeals.

Prior to trial defense counsel moved for a determination of defendant's competency to stand trial. Accordingly, the trial court ordered the defendant committed to the Center for Forensic Psychiatry of the Department of Mental Health for psychiatric evaluation. On June 21, 1967, after the requisite testing, it was recommended that the defendant be considered incompetent to stand trial. The trial court held a hearing on the matter, adjudicated the defendant incompetent to stand trial, and ordered him committed to the Ypsilanti State Hospital for treatment on June 29, 1967.

Subsequently, on January 4, 1968, medical personnel at Ypsilanti State Hospital deemed the defendant competent to stand trial. On January 19, 1968, the trial court adjudicated the defendant competent to stand trial. Following a three-day jury trial held on March 18–20, 1968, the defendant was found guilty of armed robbery.

The main thrust of the defendant's appeal relates to an allegation that he was denied a fair

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA 750.529; MSA 28.797.

trial by his counsel's failure to employ the defense of insanity.

At the beginning of the second day of trial, defendant advised the court of his dissatisfaction with his court-appointed attorney due to the fact that he had failed to give notice of and prepare an insanity defense. Defense counsel responded that in his opinion the defense of insanity was inapplicable and he had so advised the prosecuting attorney the week preceding trial. Defense counsel conceded that he had not told the defendant that the defense of insanity would not be employed until the day before trial. The prosecution objected to any new witnesses being brought on to testify in the defendant's behalf regarding the insanity defense and insisted on the four-day statutory notice. See MCLA 768.20; MSA 28.1043. The trial court stated that it would have granted a continuance at anytime before the commencement of the trial upon the basis that an insanity defense would be presented. The defendant explained that he did not tell the court beforehand that he wished to employ the defense of insanity because he did not know how to do so. Defendant stated that he stopped the trial when he did, "Because the voice told me to stop it now, if I didn't, I'd die". The trial court, however, refused to recess the trial at midpoint for the imposition of the insanity defense, and the trial continued.

Where a defendant asserts that a serious mistake on the part of the defense counsel resulted in an unfair trial, a new trial will only be granted when it appears that the new trial, wherein the mistake complained of would not be repeated, will in all likelihood result in an acquittal. *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969).

Although the test for insanity as a defense in criminal cases and the test for competency to stand trial are different and also focus upon separate points in time, *cf. People v Martin,* 386 Mich 407, 418; 192 NW2d 215, 220 (1971), and MCLA 767.27a; MSA 28.966(11), it does not follow that they are unrelated. The fact that the defendant had been initially adjudicated incompetent to stand trial should have been a strong suggestion to defense counsel of the probability that an insanity defense would have prevailed at trial. In addition, defense counsel in his motion for a determination of competency stated that the defendant had a history of instability including a period of hospitalization in Washington, D.C., for mental difficulty, he had attempted suicide, was unresponsive to questions part of the time, and that the defendant's father had filed a petition in probate court to have defendant declared mentally incompetent. The report from the Center for Forensic Psychiatry diagnosed the defendant as having "schizophrenic reaction, chronic undifferentiated type" and stated *inter alia* that the defendant had attempted suicide on three occasions between 1959 and 1965, that he was "psychotic and his holds on reality are very fragile", and that the defendant showed inappropriate laughter numerous times, stated he heard voices, and suffered from religious delusions.

At trial the defendant's parents corroborated the psychiatric report with regard to the hospitalization and counselling received in Washington, D.C. Although the defense at trial was predicated upon the alleged inability of the defendant to form the requisite intent because of his use of alcohol and marijuana, the defendant's testimony also supports and indicates the appropriateness of an insanity

defense. For example the defendant testified that when the victim of the armed robbery pulled a gun, he was "horrified" and "exploded". In response to defense counsel's next two questions, the defendant responded:

"*Q.* Do you remember being stopped or apprehended?
"*A.* Yes, sir, I do. I remember being on the ground. Prior to today I hadn't remembered being on the ground. Today, when the testimony was brought up I do remember laying on the ground. Whether I was back or face down I am not sure, but I have the feeling that yes, I recognize it, and knew I was on the ground backwards, yeah, backwards. Everything looked backwards.
"*Q.* Can you remember anything specifically that happened from there on in?
"*A.* No. When I testified I exploded, I blacked out, because after that everything became very, very bright and nothing until the next instant, which is the very next instant to me, is the bright light in my head, the reflection—not the reflection—but the feel from my head in the side of the window because I had been thrown in the ditch in the car."

Throughout his testimony, defendant stated that he "kept losing awareness of what was going on and losing intervals of time" that "consciously sometimes I'm asleep", and "I wasn't consciously aware of things, everything", and that he had thought about killing himself but something in him forced him to smoke marijuana rather than commit suicide. The defendant was not generally unresponsive to questioning at trial; however, he did testify to an "illusion of no time" and a lack of recollection of the armed robbery and surrounding incidents. We have detailed the testimony adduced at trial for the purpose of demonstrating the ease with which defense counsel could have become familiar with the defendant's mental state before trial.

In view of the foregoing type and quantity of evidence readily available and tending to support a defense of insanity, we are hard pressed to understand the defense counsel's position that the facts did not warrant the entry of an insanity plea. Even though defense counsel misstated the Michigan rule on insanity as only constituting the M'Naghten Rule of being able to tell right from wrong when the correct standard is in actuality the M'Naghten Rule coupled with any situation in which the willpower of the defendant is insufficient to restrain commission of the wrongful act, *People v Martin, supra,* p 418; 192 NW2d p 220, it is our opinion that the evidence available before trial would have supported an insanity defense based upon the M'Naghten Rule alone in view of the testimony that the defendant was psychotic, had a fragile hold on reality, heard voices and suffered from religious delusions.

Under the circumstances of this case, it is readily apparent that defense counsel made a serious mistake in not employing the defense of insanity. Applying the *Degraffenreid* test to the facts of the case at bar, we are persuaded that at a new trial where the defense of insanity is prepared, noticed, and presented there is a likelihood defendant would be found not guilty by reason of insanity. Consequently defendant's conviction is reversed and the case is remanded for a new trial.

The quantity of evidence available before trial tending to show that an insanity defense would have been meritorious and the lack of a sound reason for failing to present such a defense mandate the reversal, and we caution that this case should not be treated as a license to seek a new trial everytime defense counsel fails to present the defense of insanity.

In view of our disposition of the case, the other issues raised by the defendant concerning the competency to stand trial and the refusal of the trial court to grant a continuance or mistrial need neither be discussed nor decided.

Reversed and remanded.

All concurred.