**Giovanni CIPRIANO, Petitioner–Appellant,**

v.

**Thomas BIRKETT, Warden Respondent–Appellee.**

**No. 00–2456.**

United States Court of Appeals, Sixth Circuit.

May 13, 2002.

Before MARTIN, Chief Circuit Judge; COLE, Circuit Judge; and SHARP,* District Judge.

## OPINION

PER CURIAM.

This action stems from a 1981 criminal conviction in Michigan state court for two counts of first degree murder. Petitioner–Appellant Giovanni Cipriano brought a federal petition for a writ of habeas corpus, raising seven issues after he was denied relief under a newly-adopted Michigan procedural default rule and his state court remedies were exhausted. The district court denied Cipriano's habeas petition, but granted a certificate of appealability on three of his claims. These three claims are before us today: (1) Whether the jury instruction on sanity violated Cipriano's Fifth and Fourteenth Amendment rights to due process and Sixth Amendment right to present a defense; (2) Whether trial counsel was ineffective because he did not object to the jury instructions; and (3) Whether appellate counsel was ineffective for failing to raise certain claims on direct appeal. None of these issues has merit. Accordingly, we AFFIRM the judgment of the district court.

## BACKGROUND

### A. Factual Background

Giovanni Cipriano met Robert Ellis and Doris Haskell in Detroit in January of 1980. A common friend introduced Cipriano to the couple because they had access to a source of illegal drugs. At this initial meeting, Cipriano told Ellis and Haskell that he needed a place to stay, and they

---

* The Honorable G. Kendall Sharp, United States District Judge for the Middle District of Florida, sitting by designation.

invited him to live in their Detroit home with them. Cipriano assisted with supporting the household by shoplifting items from area stores, which Haskell would later return for money. The group later moved to Gaylord, Michigan.

This arrangement lasted for several months. The record indicates that Cipriano had frequent arguments with Ellis and Haskell. On May 7, 1980, one of these arguments resulted in a fight between Ellis and Cipriano, after which Cipriano resolved to move out of the household. While he was loading up his truck with his belongings, Cipriano claims he heard Ellis direct Haskell to retrieve his pistol. Assuming that the pistol would be used on him, Cipriano grabbed his .22 handgun and shot Ellis twice. Haskell ran next door to a neighbor's house to call the police, and then returned to her house to check on her husband. Cipriano remembers Haskell returning to the house after calling the police at the house next door, but does not recall what happened next. The police later apprehended Cipriano behind the house, and discovered the bodies of Ellis and Haskell inside the home.

### B.   Procedural History

Cipriano's trial on two counts of first degree murder began in March, 1981, in the Otsego County Circuit Court in Michigan. Cipriano raised an insanity plea at trial, and introduced an expert witness to support his claim. The trial court twice gave an improper instruction to the jury on the standard for legal sanity. The court noted:

> Correspondingly, a person is legally sane if despite mental illness that person possesses substantial capacity to appreciate the wrongfulness of his conduct *or* to conform his conduct to the requirements of the law he is charged with violating.

(emphasis added). This instruction was repeated a second time later in the jury instruction phase. The proper jury instruction under Michigan law requires both elements: a person is sane if he had "substantial capacity to appreciate the wrongfulness of his conduct" *and and* "substantial capacity to conform his conduct to the requirements of the law." MICH. COMP. LAWS § 768.21a(1); MICH. STAT. ANN. § 28.1044(1)(1). Cipriano's attorney did not object to this instruction. The trial court did instruct the jury with the correct legal definition for insanity. The legal definition for insanity given by the district court follows:

> A person is legally insane if as a result of mental illness that person lacked substantial capacity *or* ability to know that what he was doing was wrong.

> A person is also legally insane if as a result of mental illness that person in that situation and in his condition lacked substantial capacity *or* ability to conform his conduct to the requirements of the law which he is charged with violating.

(emphasis added). The use of "or" here is proper; either element is sufficient to establish insanity.

On March 26, 1981, the jury returned a verdict of guilty to two counts of first degree murder under MICH. COMP. LAWS § 750.316, rejecting Cipriano's insanity claim. The trial court imposed Michigan's mandatory sentence of life imprisonment without the possibility of parole for each conviction. Cipriano then filed a motion for a new trial, which was denied on May 6, 1982. He next appealed as of right to the Michigan Court of Appeals, which affirmed his conviction in a December 8, 1983 opinion. Cipriano then sought leave to appeal to the Michigan Supreme Court, which remanded the case on the issue of Cipriano's pre-arraignment detention. The Michigan Court of Appeals reaffirmed

the conviction in a November 1, 1985 unpublished memorandum opinion. The Michigan Supreme Court granted Cipriano's second leave to appeal the Court of Appeals decision, but affirmed the Court of Appeals on September 16, 1988 in an unpublished opinion. Cipriano's motion for reconsideration was denied on October 25, 1988.

On April 1, 1996, Cipriano filed a new motion for relief from judgment under MICH. CT. R. 6.500 et seq. This motion was denied by Otsego County Circuit Judge Dennis Murphy under the procedural bar provisions of MICH. CT. R. 6.508(D)(3) on June 19, 1996. The Michigan Court of Appeals denied Cipriano's leave to appeal on June 25, 1997, also on the basis of the procedural bar provisions. The Michigan Supreme Court denied leave on this basis on July 28, 1998.

Cipriano next filed a 28 U.S.C. § 2254 habeas petition in the United States District Court for the Eastern District of Michigan on June 2, 1999. The district court issued a memorandum opinion and order denying the petition on October 30, 2000. Cipriano filed an appeal on November 29, 2000, and the district court granted a certificate of appealability on three of Cipriano's claims on February 20, 2001.

## DISCUSSION

### 1. Standard of Review

In an appeal of a district court's decision denying habeas relief under 28 U.S.C. § 2254, this Court's review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L.No. 104–32, 110 Stat. 1214 (1996). Under AEDPA, habeas relief may not be granted with respect to any claim adjudicated on the merits in state court unless the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). This Court must presume that all determinations of factual issues made by the state court are correct unless the petitioner can rebut that presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

In *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court determined that a state court's decision is contrary to clearly established federal law where it fails to consider a rule of law that is embedded in the Court's jurisprudence at the time the state conviction became final. See 529 U.S. at 380, 120 S.Ct. 1495. In defining 'clearly established law,' the Court held that "rules of law are sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright line rule." *Id* at 382, 120 S.Ct. 1495. Comparatively, a rule established following a petitioner's conviction "that breaks new ground or imposes a new obligation on the States or the Federal Government" is not considered to be clearly established for the purposes of this section. *Id.* at 381, 120 S.Ct. 1495. The *Williams* Court further held that a state court unreasonably applies clearly established Supreme Court precedent when it correctly identifies the governing legal principle in the case, yet unreasonably applies that principle to the facts of the defendant's case. *See id.* at 413, 120 S.Ct. 1495. A state court is considered to have unreasonably applied Supreme Court precedent when it "unreasonably extends a

legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407, 120 S.Ct. 1495. We will examine Cipriano's claims under these parameters.

### 2. Analysis

A. Whether the jury instruction on sanity violated Cipriano's Fifth and Fourteenth Amendment rights to due process and Sixth Amendment right to present a defense.

Cipriano claims that the jury instructions on sanity violated his constitutional right to due process and his right to present a defense. Under Michigan law, the definition of legal sanity used by the trial court in this case was "erroneous," and because it relates to a "basic and controlling issue in the case," it is cause for reversal "upon the basis of manifest injustice." *People v. Gasco,* 119 Mich.App. 143, 326 N.W.2d 397, 399 (Mich.Ct.App.1982); *People v. Crawford,* 89 Mich.App. 30, 279 N.W.2d 560, 563–64 (Mich.Ct.App.1979). Even where both correct and incorrect instructions are given, it is presumed that the jury followed the incorrect charge. *Gasco,* 326 N.W.2d at 399 (citing *People v. Pace,* 102 Mich.App. 522, 302 N.W.2d 216, 221 (Mich.Ct.App.1980)). Michigan law does not preclude reversal on this issue on procedural default grounds because Cipriano failed to object to the improper instruction. *Gasco,* 326 N.W.2d at 398.

However, on habeas review under a § 2254 motion, the legal standard is much higher than that available for direct review. To warrant habeas relief, jury instructions must have been "so infirm that they rendered the entire trial fundamentally unfair." *Coe v. Bell,* 161 F.3d 320, 329 (6th Cir.1998). Jury instructions involving alleged state law error "may not serve as the basis for habeas relief unless they have 'so infused the trial with unfairness as to deny due process of law.'" *Sanders v. Freeman,* 221 F.3d 846, 860 (6th Cir.2000).

■ Given these parameters for review, Cipriano must establish that the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *Harris,* 212 F.3d at 943. We agree with the district court that the jury instructions in this case do not "so infuse[ ] the trial with unfairness as to deny due process of law." *Sanders,* 221 F.3d at 860. The district court analyzed the credibility of the different witnesses testifying in support of and against Cipriano's insanity plea, and ultimately determined that the prosecutor carried his burden of proving sanity. The district court also applied the harmless error standard advocated in *Brecht v. Abrahamson,* which looks to whether the erroneous jury instruction had a "substantial and injurious effect or influence in determining the jury's verdict" and thus was harmless. *See* 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Under this standard, the district court noted that the government's expert witness testified on two occasions that Cipriano was not legally insane, which would imply that he could appreciate the wrongfulness of his conduct *and* that he had the capacity to conform his conduct to the requirements of the law. *Id.* Because the opinions of the government's expert witnesses were uncontradicted on this particular point, the district court concluded that there was no reason to believe that the jury rejected these opinions. Accordingly, the district court found that the jury was not affected by the erroneous jury instruction. We agree that under the demanding standard applied to

§ 2254 habeas petitions, there is no reasonable likelihood that the instructions on sanity at Cipriano's trial infused the trial with unfairness so as to deny due process of law. *See Sanders,* 221 F.3d at 860.

Accordingly, we affirm the judgment of the district court in denying Cipriano's habeas petition on the ground that the jury instructions on sanity violated his constitutional right to due process and his right to present a defense.

B. Whether Cipriano's trial and appellate counsel were ineffective.

Cipriano argues that he was denied effective assistance of trial counsel under the Sixth Amendment of the United States Constitution when his counsel did not object to the erroneous jury instruction regarding the legal definition of sanity. He also submits that he was denied effective assistance of appellate counsel when his counsel did not challenge the erroneous jury instructions on appeal. An ineffective assistance of counsel claim has two components. First, Cipriano must show that his counsel's performance was deficient, and "made errors so serious" as to deprive him of the guarantee of counsel in the Sixth Amendment. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Second, Cipriano must show this deficient performance deprived him "of a substantial defense by his [counsel's] ineffectiveness or incompetence." *Beasley v. United States,* 491 F.2d 687, 696 (6th Cir.1974).

Cipriano fails to meet this standard for his claim of ineffective assistance of trial and appellate counsel. Like the district court, we assume that Cipriano is able to establish the first prong of the *Strickland* test—that trial counsel's failure to object to the jury instruction on sanity fell below an objective standard of reasonableness. *See Crawford,* 279 N.W.2d at 564. However, the second prong of *Strickland* requires a showing of prejudice from this failure to object to the erroneous instruction. Namely, we must consider the totality of the evidence before the judge or jury, and establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Because our analysis indicates that the jury instructions on sanity did not violate Cipriano's constitutional right to due process and his right to present a defense, Cipriano fails to meet this second prong of *Strickland. Id.*

Accordingly, we affirm the judgment of the district court in denying Cipriano's habeas petition on his claim of ineffective assistance of trial and appellate counsel.

CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.