*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0253p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

REGINALD WALKER,

          *Petitioner-Appellant,*

    *v.*

GREG MCQUIGGAN, Warden,

          *Respondent-Appellee.*

No. 10-1198

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-15686—Avern Cohn, District Judge.

Argued: June 10, 2011

Decided and Filed: September 2, 2011

Before: KEITH, CLAY, and COOK, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Jonathan Sacks, STATE APPELLATE DEFENDER OFFICE, Detroit, Michigan, for Appellant. Janet A. Van Cleve, MICHIGAN ATTORNEY GENERAL'S OFFICE, Lansing, Michigan, for Appellee. **ON BRIEF:** Jonathan Sacks, STATE APPELLATE DEFENDER OFFICE, Detroit, Michigan, for Appellant. Raina Korbakis, MICHIGAN ATTORNEY GENERAL'S OFFICE, Lansing, Michigan, for Appellee.

    CLAY, J., delivered the opinion of the court, in which KEITH, J., joined. COOK, J. (pp. 18–21), delivered a separate dissenting opinion.

_____

**OPINION**

_____

    CLAY, Circuit Judge. Petitioner Reginald Walker, a state prisoner proceeding through counsel, appeals the January 14, 2010 denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On March 1, 2001, Petitioner was convicted of

1

first degree murder, Michigan Compiled Laws § 750.316, and possession of a firearm in the commission of a felony, Michigan Compiled Laws § 750.227b, in the shooting death of Larry Troup.  Petitioner claims that his trial counsel provided ineffective assistance when he failed to investigate and present an insanity defense, despite being aware of Petitioner's long and well-documented history of severe mental illness.

For the reasons that follow, we **REVERSE** the decision of the district court and **GRANT** Petitioner's application for a writ of habeas corpus.

## BACKGROUND

### I.        The Murder of Larry Troup

Near midnight on the evening of April 11, 2000, inside a liquor store on the northwest side of Detroit, Petitioner Reginald Walker fired several gunshots at Larry John Troup—a complete stranger—killing him.  The Michigan Court of Appeals summarized the testimony recounting the events of that night as follows:

> The prosecution presented testimony that at about midnight, Walter Gaiter and Troup entered the store to purchase some beer.  After paying for the beer at the checkout counter, Gaiter leaned back into defendant, who was behind them.  After Gaiter apologized for bumping into defendant, defendant told him that he did not like being touched, which defendant repeated after he paid for his purchases.  Pausing, defendant then pulled an automatic handgun from under this [sic] jacket and fired three or four shots, killing Troup instantly.  Neither Gaiter nor Troup was armed.  Defendant then picked up the clip that had fallen to the floor, put it in his pocket, and walked out the store.

*People v. Walker*, No. 233494, 2003 WL 133057, at *1 (Mich. Ct. App. Jan. 3, 2003).

The defense presented a radically different version of events at trial, in support of its contention that Walker acted both by accident and in self-defense:

> Testifying in his own behalf, defendant maintained that he did not intend to kill anyone that night.  During the late afternoon and evening before going to the store, defendant consumed two 40 ounce bottles of beer and a significant quantity of vodka.  Defendant testified that he went to Sam's Drugs to buy liquor and cigarettes, and was standing in line behind

Gaiter and Troup. According to defendant, he was wearing about $1,500 in jewelry when Gaiter put his arm around him and said, "That's some nice jewelry you got on, man, old man." Defendant further testified that Gaiter had his hand in his pocket when he commented about defendant being drunk and that he could get robbed. When Gaiter then tried to force defendant into one of the aisles, Troup, showing him a pistol in his belt, told defendant not to run. According to defendant, Troup then bumped him. In response, defendant pulled his pistol from his waist area. At the same time, Gaiter pulled out a gun and shot defendant, hitting him in the hand. Because defendant's hand was on the trigger, his gun went off. According to defendant, he did not know that Troup had been shot.

*Id.*

After the shooting, Walker proceeded to a semi-abandoned house in the neighborhood. He punched a hole in the drywall in the bathroom and placed the gun inside. Police received information from the store clerk, Ronald Yaldo, which led them to the house, where they arrested Walker.

All forensic evidence, at the scene of the shooting and in the house where Walker was found, pointed to Walker as the shooter. The police also determined that neither Troup nor his companion in the liquor store, Gaiter, were carrying weapons at the time of the shooting. Lastly, there was no forensic evidence to indicate that Walker had been shot during the incident.[1]

At trial, Yaldo, the store clerk present at the shooting, and Gaiter, Troup's friend, both testified consistent with the prosecution's presentation. In brief, both testified that Troup and Gaiter made a purchase at the counter; decided to buy something else and went back into the store's aisles, during which time Gaiter accidentally bumped into Walker; words were exchanged between the three men in a normal tone of voice; Walker paused and shot Troup; Walker picked up an ammunition clip, which had fallen out of the gun during the shooting, and then walked out of the store at a regular pace. (R. 10-3: Yaldo Tr. at 3-24.)

---

[1]While one of Walker's hands was bleeding when he was arrested, the record indicates that Walker injured himself while punching the hole into the drywall in which he hid the gun.

## II.     Walker's Defense at Trial

On March 1, 2001, Walker was convicted by jury of first degree murder, in violation of Michigan Compiled Laws § 750.316, and possession of a firearm in the commission of a felony, in violation of Michigan Compiled Laws § 750.227b. At trial, Walker admitted to shooting the decedent, Larry John Troup, and presented a mixed defense of accident, self-defense and intoxication. He was sentenced to life without the possibility of parole for murder, and two years for the felony firearm charge.

Walker's trial counsel, William Winters ("Counsel"), was the third attorney either retained by or appointed to Walker. Prior to Counsel coming onto the case, Walker's previous attorney had filed a notice of intent to pursue an insanity defense.[2] Following from this notice, the trial court ordered a competency/diminished capacity examination of Walker, which was performed by Dr. Dexter Lee Fields, a psychiatrist at the Wayne County Circuit Court Psychiatric Clinic. Dr. Fields had, on several prior occasions, examined Walker in conjunction with other court cases.[3]

After examining Walker, Dr. Fields concluded that Walker was criminally "responsible, and that he was not diminished in his ability to form the intent to commit the offense." (R. 11-2: Fields Tr. at 64.) Though, under Michigan law, defense counsel had the option to request a clinical evaluation by an independent psychiatrist of his choice, *see* Mich. Comp. Laws Ann. § 768.20a(3) (West 2001), Counsel chose not to do so. Counsel testified that he made this decision because he "did not believe that a defense of insanity in this case would be successful. Now, there is no legitimate reason for not asking, because . . . Mr. Walker [was] entitled to have an independent exam." (R. 11-2: Winters Tr. at 80.)

---

[2] It appears that the attorney who requested a competency evaluation and filed the notice was Richard Glanda. On August 29, 2000, Walker requested new counsel and Glanda was released. (R. 10-4: Arraignment Tr. at 9-15.)

[3] In 1985, Dr. Fields had found Walker mentally ill in relation to another criminal charge. (R. 11-3: Fields Tr. at 44-45.)

Counsel then chose to abandon an insanity defense, instead opting for the mixed accident/self-defense/intoxication theory eventually presented to the jury.  Counsel's stated rationale for doing so was that: 1) an insanity defense "put[] the burden on the defense to show by a preponderance," 2) "[he] was afraid of a compromised verdict [of guilty but mentally ill[4]]," 3) he was concerned about opening the door to evidence from an assault charge pending against Walker being admitted, and 4) he thought that "it would be a difficult proposition to get the jury to believe [it]."  (R. 11-2: Winters Tr. at 85-86.)

At the time that Counsel made this decision, there is no dispute that he was aware that Walker had a significant history of mental illness, and that "Mr. Walker had written numerous letters [to him] indicating his mental history, the fact that at times he had heard voices."  (*Id.* at 81.)  Furthermore, Counsel testified that Walker may have told him, shortly after the shooting, that he had been hearing voices on the day of the incident.  (*Id.*)  Counsel was also aware that the evidence that would be presented at trial—namely, the eyewitness testimony of the store clerk and Gaiter, the lack of weapons at the scene attributable to either Gaiter or Troup, and the absence of a wound on Walker consistent with having been shot—all directly contradicted the defense of accident/self-defense that he presented.

---

[4]In addition to the verdict of "not guilty by reason of insanity" ("NGI"), a jury in Michigan also has the option of finding a defendant "guilty but mentally ill" ("GBMI"):

> (1) If the defendant asserts a defense of insanity in compliance with section 20a, the defendant may be found "guilty but mentally ill" if, after trial, the trier of fact finds all of the following beyond a reasonable doubt:
>
>> (a) That the defendant is guilty of an offense.
>> (b) That the defendant was mentally ill at the time of the commission of that offense.
>> (c) That the defendant was not legally insane at the time of the commission of that offense.

Mich. Comp. Laws Ann. § 768.36 (West 2001).  A defendant found GBMI is subject to the same penalties as one who is found guilty, though once incarcerated "he shall undergo further evaluation and be given such treatment as is psychiatrically indicated for his mental illness or retardation." *Id.* Thus, "[t]he verdict does not absolve a defendant of criminal responsibility; rather, it affords him psychiatric treatment." *People v. Stephan*, 616 N.W.2d 188, 194 (Mich. Ct. App. 2000).  When a defendant asserts an insanity defense, Michigan law requires the court to instruct the jury on both NGI and GBMI. *See* Mich. Comp. Laws Ann. § 768.29a (West 2001).

### III.     State Direct and Collateral Review

In his appeal as of right, Walker raised a single claim of ineffective assistance of counsel. Walker alleged that his attorney failed to investigate or raise an insanity defense, although Walker had an extensive history of severe mental illness.

The Michigan Court of Appeals found that Walker had received deficient representation from his trial counsel, based on counsel's objectively unreasonable failure to investigate whether an insanity defense might be available to Walker. On January 3, 2003, the court of appeals issued an order remanding the case to the trial court for a determination of whether Walker was prejudiced by his counsel's failure. *Walker*, 2003 WL 133057.

The trial court held an evidentiary hearing, known in Michigan as a *Ginther* hearing, on the question of prejudice. At the *Ginther* hearing, Walker's appellate counsel presented testimony regarding Walker's history of mental illness. Forensic psychologist Dr. Steven Miller testified that Walker's medical records reflect that Walker began receiving treatment for mental health problems when he was approximately sixteen years old.[5] (R. 10-21: Miller Tr. at 20.)

Beginning in 1983, Walker was hospitalized several times for "schizophrenic type" ailments, including "severe depression, mental confusion . . . [and] hallucinating," at more than half a dozen hospitals and treatment facilities. (*Id.* at 21.) From 1983, until sometime before Troup's murder, Walker had been prescribed antipsychotic medications, though his compliance with them had been spotty at best.[6] (*Id.* at 21-22.) Walker's diagnoses during this period included paranoid schizophrenia, generalized schizophrenia, schizoaffective disorder, depression, bi-polar disorder, and alcohol dependence. (R. 11-3: Fields Tr. at 39-41.)

---

[5]Walker was fourty-six years old at trial.

[6]Dr. Fields testified that Walker told him, in November of 2000, that he had been taking his medication at the time of the crime. (R. 11-2: Fields Tr. at 68.)

Prior to the crime, Walker was receiving Social Security Disability benefits for his mental health issues, and his mother had been appointed his guardian. (R. 11-2: Winters Tr. at 108.) Lastly, within the six months proceeding the crime, Walker had been involuntarily committed for mental treatment by his mother, in part, for symptoms which included "talking to himself all day and night." (R. 10-2: Miller Tr. at 28; *see also* R. 11-3: Fields Tr. at 43.)

In testimony, Dr. Fields confirmed that Walker had been admitted to treatment throughout the 1990s for "feeling suicidal[, i]n some cases homicidal, and he frequently said that he heard voices." (R. 11-2: Fields Tr. at 70.) Dr. Fields also confirmed that Walker had been prescribed antipsychotic medication throughout his life. Nonetheless, Dr. Fields diagnosed Walker as not mentally ill, in any way, at the time of the crime.[7] (R. 11-3: Fields Tr. at 48.)

At the close of five days of testimony, the Michigan trial court issued a determination in which it concluded that Walker did not suffer prejudice due to his trial counsel's deficient performance. The trial court therefore found that Walker failed to show that he received ineffective assistance of counsel.

Walker appealed the decision of the trial court and on March 22, 2005, the Michigan Court of Appeals affirmed the decision. *People v. Walker*, No. 249406, 2005 WL 657727 (Mich. Ct. App. March 22, 2005) (per curiam). On September 28, 2005, the Michigan Supreme Court denied Walker's application for leave to appeal. *People v. Walker*, 703 N.W.2d 815 (Mich. 2005) (table).

On December 21, 2006, Walker filed a petition for a writ of habeas corpus in the district court. In his petition, Walker again raised the single claim of ineffective assistance of counsel based on Counsel's failure to pursue an insanity defense.

---

[7]Dr. Fields testified ambiguously as to whether he believed, at the time of Walker's trial, that a finding of intoxication (or diminished capacity) precluded a finding of legal insanity. (R. 11-3: Fields Tr. at 18-24.) Under Michigan law, "[a]n individual who was under the influence of voluntarily consumed or injected alcohol or controlled substances at the time of his or her alleged offense is not considered to have been legally insane solely because of being under the influence of the alcohol or controlled substances." Mich. Comp. Laws Ann § 768.21a(2) (West 2001).

On November 13, 2009, a magistrate judge issued a report recommending that the court deny Walker's petition. The district court adopted the magistrate's recommendation in an order dated January 14, 2010, and accordingly denied Walker's habeas petition and dismissed the case.

The district court granted Walker a certificate of appealability, and Walker filed this timely appeal.

## ANALYSIS

### I.     Standard of Review

We review the legal conclusions underlying a district court's denial of a petition for a writ of habeas corpus *de novo* and its factual findings for clear error. *Smith v. Mitchell*, 567 F.3d 246, 255 (6th Cir. 2009).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may only grant a habeas petition when a state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

A decision is contrary to federal law when "the state court arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent," but reaches a contrary decision. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). "[R]eview under § 2254(d)(1) focuses on what a state court knew and did." *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1399 (2011). Therefore, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* at 1398.

Under § 2254(d)(2), "even if reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination," unless that determination was unreasonable. *Wood v. Allen*, — U.S. —, 130 S. Ct. 841, 850 (2010) (internal quotation marks and citations omitted). Therefore, a determination by this Court that the state court's decision was in error will not suffice for the purposes of habeas relief; instead, we must find that the decision was objectively unreasonable.

"AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, — U.S. —, 130 S. Ct. 1855, 1862 (2010) (internal quotation marks and citations omitted).

## II.     Ineffective Assistance of Counsel Framework

Ineffective assistance of counsel claims are governed by the framework first articulated in *Strickland v. Washington*:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687 (1984).

We determine whether counsel's performance was deficient by reference to an "objective standard of reasonableness," based on "prevailing professional norms." *Rickman v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997) (quoting *Strickland*, 466 U.S. at 688). Counsel's performance must be assessed according to the time of representation, and not in hindsight. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

In order to show that he was prejudiced by counsel's performance, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Certainty of a different outcome is not required.

### III.     Final State Court Decision

The Michigan Court of Appeals was the final state court to review Walker's claim of ineffective assistance of counsel.  In accordance with the law of the case doctrine, the state court of appeals found "that defendant's claim of ineffective assistance of counsel satisfied the first factor of the *Strickland . . .* test." *Walker*, 2005 WL 657727, at *1 n.6.  The only question before the state appeals court, then, was whether Counsel's deficient performance was prejudicial to Walker.

The court of appeals set forth the following standard for prejudice:

> Ineffective assistance of counsel includes the failure to investigate and
> present an insanity defense.  However, reversal is warranted only if the
> defense is meritorious and the failure to present it deprived the defendant
> of a reasonably likely chance of acquittal.

*Id.* at *1 (citing *People v. Hunt*, 427 N.W.2d 907, 913 (Mich. Ct. App. 1988)).  Applying this standard, the state court held that "defendant failed to show that he had a meritorious insanity defense, and thus, failed to show that counsel was ineffective for failing to present such a defense." *Id.* at *2.

The court of appeals supported its decision by reasoning that "defendant failed to show that his trial counsel had reason to believe that defendant may have been suffering from a mental illness that rendered him legally insane at the time of the offense," and that "[t]he competency and criminal evaluation of defendant by Dr. Dexter

Fields concluded that defendant was competent to stand trial and that he was not mentally ill at the time of the offense." *Id.* at *1.

Furthermore, the court reasoned:

> defendant's actions, such as picking up the clip after the shooting, leaving the scene of the crime, going into the abandoned house and hiding the gun in a hole, suggest that defendant recognized the consequences of his criminal behavior, and that his behavior was wrongful. The evidence further shows that defendant lied to police by giving them aliases on three different occasions. Even with Dr. Stephen Miller's testimony in favor of an insanity defense, in light of evidence that defendant had the consciousness of guilt, we conclude that there is not a reasonable probability that defendant had a likely chance of acquittal.

*Id.* at *2.

Finally, the Michigan Court of Appeals found that because "defendant testified clearly and consistently in his own behalf that he acted in self-defense . . . we are unable to conclude that counsel's decision to advance defendant's self-defense claim deprived defendant of a substantial defense." *Id.*

Because the state appeals court clearly explained its reasoning in denying Walker's claim of ineffective assistance of counsel, we need not apply the standard recently articulated by the Supreme Court in *Harrington v. Richter*, —U.S.—, 131 S. Ct. 770 (2011), which requires that a federal habeas court hypothesize as to the state court's reasoning where the state court has remained silent. *See id.* at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here [where the state court disposed of a claim in a summary order], could have supported, the state court's decision."). Thus, our AEDPA review focuses on the reasoning given in the opinion of the Michigan Court of Appeals.

**IV.    Application to Facts**

The defense of legal insanity, at the time of Walker's trial, was defined by the state of Michigan as:

> . . . an affirmative defense to a prosecution for a criminal offense that the defendant was legally insane when he or she committed the acts constituting the offense. An individual is legally insane if, as a result of mental illness . . . or as a result of being mentally retarded . . . , that person lacks substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law. Mental illness or being mentally retarded does not otherwise constitute a defense of legal insanity.

Mich. Comp. Laws Ann. § 768.21a (West 2001).

Under Michigan's Mental Health Code, "mental illness" was defined as "a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." Mich. Comp. Laws Ann. § 330.1400(g) (West 2001).

At Walker's *Ginther* hearing, forensic psychologist Dr. Steven Miller testified regarding his professional opinion of Walker's mental health history and state of mind at the time of the crime. Dr. Miller diagnosed Walker as having schizoaffective disorder, which he described as "a form of schizophrenia, which has a bipolar component to it." (R. 10-20: Miller Tr. at 23.) Dr. Miller further testified that schizoaffective disorder is a psychotic disorder, which can include delusions and hallucinations. (*Id.*) This particular diagnosis appears to have initially been made as early as 1990, and is consistent with Walker's other diagnoses of various forms of schizophrenia. (*Id.*)

Dr. Miller testified that Walker's psychotic symptoms manifested themselves in Walker "hear[ing] voices" which told him "negative comments regarding his self esteem" and "negative comments about what other people are trying to do to him." (*Id.* at 25.) At these times, Walker also suffered from "generalized paranoia," which is of a type where Walker believed that "other people are talking about [him], other people are trying to hurt [him], other people are trying to do things to [him]." (*Id.*)

Dr. Miller opined that Walker's schizoaffective disorder "significantly impair[ed] his capacity to recognize reality." (*Id.* at 26.) In Dr. Miller's opinion, Walker "lack[ed] the substantial capacity to appreciate the nature and quality" and "wrongfulness of his

acts," and he "lack[ed] the capacity to conform his conduct to the requirements of the law." (*Id.* at 27.) Following from the foregoing, Dr. Miller testified that it was his professional opinion that Walker was legally insane at the time of the crime. (*Id.* at 28.)

As summarized above, though Dr. Field's later conclusion regarding Walker's mental state at the time of the crime differed from Dr. Miller's, both psychiatrists agreed that Walker had a significant history of suffering from mental illness, as defined under Michigan law. Both also agreed that the type of mental illness that Walker historically suffered from could create symptoms rising to the level of legal insanity.

In denying Walker relief, the Michigan Court of Appeals both unreasonably applied clearly established federal law, and unreasonably determined facts in light of the evidence. First, while the court of appeals was only tasked with the issue of determining prejudice, its entire analysis focused on determining whether Counsel performed deficiently. The state appeals court's decision to evaluate Counsel's performance based solely on what Counsel knew at the time that he abandoned the insanity defense was unreasonable. As the court of appeals itself said in 2003, because "[Walker's] trial counsel did not sufficiently investigate the insanity defense by obtaining an independent evaluation to rebut the evaluation provided by the forensic center, he was not in a position to make a reasoned choice whether such a defense would succeed in this case." *Walker*, 2003 WL 133057, at *3.

The record clearly indicates that Counsel's complete and blind reliance on Walker's own narrative regarding the events of the crime (which was squarely at odds with all evidence and common sense) and Dr. Field's competency report, in forming a defense strategy, constituted deficient performance. Although Counsel was aware of Walker's longstanding and well-documented history of severe and oftentimes incapacitating mental illness (including psychotic and schizophrenic diagnoses), Counsel did not request or review his medical records, (R. 11-2: Winters Tr. at 99); did not request an independent psychiatric evaluation, which Walker was entitled to under Michigan law; and did not conduct any other investigation into Walker's mental history or mental state at the time of the crime. *See Strickland*, 466 U.S. at 691 (holding that

"counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary"); *Couch v. Booker*, 632 F.3d 241, 246 (6th Cir. 2011) (stating that "any limitation on counsel's investigation must be supported by a reasonable professional judgment" (internal quotation marks and citations omitted)). Counsel's reliance on Dr. Field's report in weighing whether insanity was a substantial or appropriate defense was additionally egregious because Dr. Field's assessment, at the time of trial, focused both on whether Walker was competent to stand trial and whether he was legally insane. There is no indication that Counsel made any effort to parse this distinction. *Cf. People v. Tumpkin*, 212 N.W.2d 38, 39 (Mich. Ct. App. 1973) (stating that, though interrelated and mutually informative, "the test for insanity as a defense in criminal cases and the test for competency to stand trial are different and also focus upon separate points in time").

Furthermore, the state court's reliance on Counsel's later justification "that even if he could obtain an independent evaluation to support defendant's insanity defense, it would not have had much effect on the jury's decision," *Walker*, 2005 WL 657727, at *1, was also unreasonable. Counsel did not assert, for instance, that his "strategy . . . was reasonable at the time" or that he was concerned with "balanc[ing] limited resources in accord with effective trial tactics and strategies." *Harrington*, 131 S. Ct. at 789. Instead, Counsel testified only that, had he conducted an investigation, he "still would have gone for the defense that he opted for, and not for the insanity defense." (R. 11-5: *Ginther* Op. at 18.) The state trial court's primary reliance on the judgment and opinion of Counsel, who the state appeals court had already found deficient was unreasonable.

Equally as importantly, the state court of appeals, while properly stating the *Strickland* standard for prejudice, clearly interpreted that standard to require that Walker prove that presenting an insanity defense would have led to his acquittal. *See Sears v. Upton*, —U.S.—, 130 S. Ct. 3259, 3264 (2010) ("Although the court appears to have stated the proper prejudice standard, it did not correctly conceptualize how that standard applies to the circumstances of this case."). A prejudice standard requiring an almost certainty of acquittal would be virtually impossible to meet in cases involving questions

of legal insanity—once a defendant has been held competent to stand trial, the success of an insanity defense rests wholly on what members of the jury believe about the defendant's mental state at the moment of the crime. *See Ake v. Oklahoma*, 470 U.S. 68, 81 (1985) ("Perhaps because there often is no single, accurate psychiatric conclusion on legal insanity in a given case, juries remain the primary factfinders on this issue . . . .").

The Michigan Court of Appeals' brief prejudice analysis, that Walker's "actions [after the shooting] . . . suggest that defendant recognized the consequences of his criminal behavior, and that his behavior was wrongful," is also unreasonable. *Walker*, 2005 WL 657727, at \*2. Under Michigan law, legal insanity is determined with reference to the moment where a defendant "commit[s] the acts constituting the offense." Mich. Comp. Laws Ann. § 768.21a (West 2001). Thus, what that person does after the offense might be informative from a clinical perspective in attempting to reconstruct a defendant's mental state, but it is not determinative of legal insanity and so is not directly relevant to the question of Counsel's ineffectiveness. The state appeals court's determination, based on its own assessment that the "evidence that defendant had the consciousness of guilt" outweighed all evidence regarding Walker's mental illness, is a thinly veiled and unsupportable conclusion that it simply did not believe that Walker was legally insane. The factual determination of whether Walker was insane is not the question that the court was required to answer, or should have endeavored to answer, in order to determine prejudice under *Strickland*.

To warrant habeas relief, a petitioner such as Walker is not required to show that he had a winning defense or that he was legally insane at the time of the crime. Instead, he must only show that he had a substantial defense, *Cipriano v. Birkett*, 42 F. App'x 680, 685 (6th Cir. 2002) (citing *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974)), and that failure to present that defense rendered the trial fundamentally unfair or unreliable.[8] *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). This is not a case

---

[8] Although the Supreme Court has not employed the "substantial defense" language as we have in our Circuit, this language does not articulate a separate standard from *Strickland*, but instead supports the "reasonable probability" language of *Strickland's* prejudice prong. In *Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1420 (2009), the Supreme Court found no *Strickland* violation in a defense attorney's abandonment of an insanity defense, because *Strickland* does not "require[] defense counsel to

where there is little or no evidence of Walker's mental illness. On the contrary, the evidence that Walker suffered from chronic and severe mental illness is not only overwhelming, but it is uncontested. That the jury heard *nothing* about his mental illness and its effects clearly renders the result of the trial highly unreliable and fundamentally unfair.

There is an overwhelming probability that knowledge of Walker's history of severe mental illness would have shed a different light for the jury on witness testimony regarding the facts of the crime. That Walker shot and killed a complete stranger with minimal to no provocation, but then testified "clearly and consistently" that he believed that Gaiter and Troup were trying to kill him and actually shot him, might have been better understood by a jury with knowledge that Walker's longstanding mental condition included paranoia and delusions.

Finally, Counsel's choice to forgo the meritorious defense of insanity in favor of a defense that he knew was contradicted by every piece of physical, circumstantial, and eyewitness testimonial evidence strongly supports the findings of deficient performance by counsel and prejudice. Counsel's defense required the jury to believe the word of Walker over that of Gaiter, Yaldo, and every police officer involved in the investigation. *Cf. Premo v. Moore*, — U.S. —, 131 S. Ct. 733, 741 (2011) (stating that habeas court must determine ineffective assistance "in light of information then available to counsel"). Presenting such a defense in lieu of insanity (or any other plausible defense), was an error that was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The Michigan Court of Appeals determination to the contrary, based almost completely on Counsel's own assessment that Walker was not prejudiced by his performance, was clearly unreasonable.

---

pursue every claim or defense, regardless of its merit, viability, or realistic chance for success," and no prejudice could be shown where it was "highly improbable" that a jury would have reached a different result if presented with the defense. *Id.* The logical inverse of this holding is that where a defense is meritorious, viable and has a realistic chance for success, and where there is probability that a jury would have reached a different result if presented with the defense—that is, where the defense is substantial—there may be grounds to find ineffective assistance of counsel.

## V.        Summary

Though the "standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so," *Harrington*, 131 S. Ct. at 788 (internal quotation marks and citations omitted), we find that each standard has been met in this case. Because Walker's counsel, without conducting reasonable investigation, abandoned the substantial, and only plausible, defense available to Walker, we find that both prongs of the *Strickland* analysis have been met. We also find unreasonable the state court's application of *Strickland*, which required both a virtual surety of acquittal and focused on what choices Walker's counsel attests he would have made had he known what he did not bother to find out. Here, there can be no "reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

## CONCLUSION

The district court erred when it found that Walker did not receive constitutionally ineffective assistance of counsel at trial. We therefore **REVERSE** the decision of the district court, **GRANT** Walker's petition for a writ of habeas corpus, and order Walker released from custody unless the state commences a new trial within 180 days of the date of this order.

————————

**DISSENT**

————————

COOK, Circuit Judge, dissenting.  I agree with the majority's statement of the facts and legal rules, as well as with its assessment that Walker's trial counsel performed deficiently.  But because I differ in my resolution of the prejudice issue, I respectfully dissent.

As the majority notes, *Strickland*'s prejudice test requires Walker to show that his trial's outcome "would reasonably likely have been different absent [his counsel's] errors."  *See Strickland v. Washington*, 466 U.S. 668, 696 (1984).  On direct appeal, the reviewing court must "evaluate the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the [post-conviction] proceeding—in reweighing it against the evidence in aggravation."  *Williams v. Taylor*, 529 U.S. 362, 397–98 (2000).  "The likelihood of a different result must be substantial, not just conceivable," *Harrington v. Richter*, 131 S. Ct. 770, 792 (2011), and "sufficient to undermine confidence in the outcome," *Strickland*, 466 U.S. at 694.  "Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010).

In the habeas context, Walker's duty becomes all the more exigent.  Under § 2254(d)(1), we, the federal courts, owe the state court additional "deference and latitude" not required during direct appeal, *Harrington*, 131 S. Ct. at 785, and thus constrict our review to whether the state court's application of Supreme Court precedent was "unreasonable," *see* 28 U.S.C. § 2254(d)(1).  "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law."  *Williams*, 529 U.S. at 410.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington*, 131 S. Ct. at 786.  Indeed, § 2254(d), as amended by AEDPA, stops short

of "a complete bar" on relitigation of state proceedings in the federal courts, permitting us to grant habeas only when "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Id.*

My concerns with the majority opinion are three-fold. As an initial matter, the majority states that the Michigan Court of Appeals "unreasonably determined facts in light of the evidence." Although, after parsing the opinion, I am unable to resolve with *which* factual determinations my colleagues take issue, I believe that, in this instance, such an assessment oversteps our authority. Under 28 U.S.C. § 2254(e)(1), we, the reviewing habeas court, must presume the correctness of the state court's factual determinations; the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *See, e.g.*, *Carter v. Bradshaw*, 644 F.3d 329, 340–41 (6th Cir. 2011) (applying § 2254(e)(1)'s presumption of correctness to state court's factual competency determination). Walker does not argue on appeal that the state court made unreasonable factual determinations. I thus conclude that we may not attack the Michigan court's factual findings sua sponte, and must instead limit our analysis to its application of Supreme Court precedent.

Second, the majority appears to fault the state appellate court for misconstruing law *other than* "clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1). For example, the majority questions the state court's interpretation and application of Michigan's insanity statute. This issue exceeds the scope of our review: the Supreme Court "ha[s] repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Similarly, relying on our circuit's precedent, the majority claims that the court erred in failing to recognize that Walker need only show "that he had a substantial defense" to demonstrate prejudice. Yet Sixth Circuit case law, standing alone, is not "clearly established Federal law," and as such, is not the proper means by which to measure the state appellate court's interpretation of *Strickland*. *See Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009) ("[I]t is not an unreasonable

application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." (internal quotation marks and citations omitted)).

I recognize that the Supreme Court's *Strickland* guidelines provide us only minimal direction. But in a habeas case, such generality necessarily works to the petitioner's disadvantage. *See Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."); *accord Knowles*, 129 S. Ct. at 1420 ("And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.").

And, as a final issue, in my estimation, the majority overstates the extent to which the Michigan Court of Appeals erred in applying *Stickland*. According to the majority, the state court "clearly interpreted [*Strickland*] to require that Walker prove that presenting an insanity defense would have led to his acquittal." I do not find the court's transgression so obvious, seeing as nothing in the record indicates *exactly what* evidence the state court would have deemed adequate under *Strickland*. Though the panel—myself included—might have decided the case differently on direct appeal, this is not the appropriate inquiry. *See Williams*, 529 U.S. at 411; *see also Harris v. Haeberlin*, 526 F.3d 903, 910 (6th Cir. 2008) ("[I]n applying the 'unreasonable application' clause, a reviewing court must be careful not to substitute its own judgment for that of the state court by equating the more stringent standard of 'objectively unreasonable' with the more lax standard of 'clear error.'"). The majority also cites *Ake v. Oklahoma*, 470 U.S. 68 (1985), for the proposition that juries should generally remain the primary factfinders on the issue of insanity. By the same token, *Ake* also warns that "[p]sychiatry is not . . . an exact science." *Id.* at 81. Recognizing the inherent uncertainty of psychiatric evaluations, I am all the more hesitant to reject the state court's weighing of such testimony.

Before granting habeas, we must determine that no "fairminded jurists could disagree" on the incorrectness of the state court's decision. *See Yarborough*, 541 U.S. at 664. I, for one, lack such certitude. In this instance, the state appellate court reviewed Walker's newfound mitigating evidence (Dr. Miller's testimony) and weighed this against the aggravating evidence (Dr. Winters's contrary testimony, as well as the physical and circumstantial evidence). It concluded that, because the totality of the evidence still suggested that Walker had consciousness of guilt, the insanity defense would not likely have succeeded. This approach appears to comply with the Supreme Court's instructions. *See Williams*, 529 U.S. at 397–98.

In his brief, Walker cites several cases from our sister circuits in which panels have held that counsel's failure to pursue an insanity defense resulted in prejudice, particularly in light of a defendant's history of mental illness. Yet certainly there are cases that turn out the other way. In particular, I highlight an Eleventh Circuit case, *Bottoson v. Moore*, 234 F.3d 526 (11th Cir. 2000), which I find quite similar to the instant scenario. The *Bottoson* defendant, a once-suicidal schizophrenic, brought an ineffective-assistance claim for his counsel's failure to pursue an insanity defense at the penalty stage of his capital trial. During the post-conviction hearing, the defendant introduced evidence of prior mental illness, as well as expert testimony from a psychiatrist who opined that the defendant was legally insane at the time of the offense; the state presented contrary expert testimony. The Florida Supreme Court found that, despite this exculpatory expert testimony, the error was non-prejudicial in light of the state expert's conflicting testimony and the rest of the circumstantial evidence. On collateral appeal, both the district and circuit courts agreed. Although *Bottoson* is by no means dispositive in this case, I view it similar enough to suggest that there is room to debate whether the Michigan Court of Appeals correctly decided Walker's case, thus placing the majority's position in doubt.

In light of the foregoing, I maintain that reasonable jurists could disagree as to the correctness of the state appellate court's decision. I therefore would affirm the district court.