# SUPREME COURT OF THE UNITED STATES

## PHILIP PARKER, WARDEN *v.* DAVID EUGENE MATTHEWS

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 11–845.　Decided June 11, 2012

PER CURIAM.

In this habeas case, the United States Court of Appeals for the Sixth Circuit set aside two 29-year-old murder convictions based on the flimsiest of rationales. The court's decision is a textbook example of what the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) proscribes: "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico* v. *Lett*, 559 U. S. ___, ___ (2010) (slip op., at 12). We therefore grant the petition for certiorari and reverse.

I

Between 1 and 2 a.m. on the morning of June 29, 1981, respondent David Eugene Matthews broke into the Louisville home he had until recently shared with his estranged wife, Mary Marlene Matthews (Marlene). At the time, Matthews' mother-in-law, Magdalene Cruse, was staying at the home with her daughter. Matthews found Cruse in bed and shot her in the head at point-blank range, using a gun he had purchased with borrowed funds hours before. Matthews left Cruse there mortally wounded and went into the next room, where he found his wife. He had sexual relations with her once or twice; stayed with her until about 6 a.m.; and then shot her twice, killing her. Cruse would die from her wound later that day.

Matthews was apprehended that morning at his mother's house, where he had already begun to wash the

clothes he wore during the crime. Later in the day, police officers found the murder weapon secreted below the floorboards of a backyard shed on the property. At the police station, Matthews made a tape-recorded statement to a police detective in which he denied responsibility for the murders.

A grand jury indicted Matthews for the two murders and for burglary. At trial, he did not contest that he killed the two victims. Instead, he sought to show that he had acted under "extreme emotional disturbance," which under Kentucky law serves to reduce a homicide that would otherwise be murder to first-degree manslaughter. Ky. Rev. Stat. Ann. §§507.020(1)(a), 507.030(1)(b) (West 2006). As support for that claim, Matthews pointed to the troubled history of his marriage with Marlene. Matthews and his wife had been frequently separated from one another, and their periods of separation were marked by extreme hostility. Marlene would regularly procure criminal warrants against Matthews; several weeks before the murders she obtained one charging Matthews with sexual abuse of Marlene's 6-year-old daughter, which had led to Matthews' spending roughly three weeks in jail. Witnesses also testified that Marlene sought to control Matthews when they were together and would yell at him from across the street when they were separated; and Matthews' mother recounted that Marlene would leave the couple's young child crying in the street late at night outside the house where Matthews was sleeping in order to antagonize him.

Matthews also introduced the testimony of a psychiatrist, Dr. Lee Chutkow, who had evaluated Matthews. Dr. Chutkow related what Matthews had told him about the murders, including that Matthews had been drinking heavily and taking Valium and a stimulant drug. Dr. Chutkow testified that he had diagnosed Matthews as suffering from an adjustment disorder, which he described

as a "temporary emotional and behavioral disturbance in individuals who are subject to a variety of stresses," that would temporarily impair a person's judgment and cause symptoms such as "anxiety, nervousness, depression, even suicide attempts or attempts to hurt other people." 6 Record 558. Dr. Chutkow testified to his opinion that Matthews was acting under the influence of extreme emotional disturbance at the time of the murders—in particular, that he experienced "extreme tension, irritability, and almost a kind of fear of his late wife," *id.,* at 567, whom he perceived as having tormented and emasculated him.

The jury convicted Matthews on all charges, and he was sentenced to death. The Kentucky Supreme Court affirmed the convictions and sentence, rejecting Matthews' 37 claims of error. *Matthews* v. *Commonwealth*, 709 S. W. 2d 414, 417 (1985). In response to Matthews' argument that the evidence was insufficient to establish that he had acted in the absence of extreme emotional disturbance, the court concluded that the evidence regarding Matthews' "conduct before, during and after the offense was more than sufficient to support the jury's findings of capital murder." *Id.,* at 421. A claim that the prosecutor had committed misconduct during his closing argument was rejected on the merits, but without discussion.

Following an unsuccessful state postconviction proceeding, Matthews filed a petition for a writ of habeas corpus under 28 U. S. C. §2254 in the United States District Court for the Western District of Kentucky. Matthews contended, among other things, that the Kentucky Supreme Court had contravened clearly established federal law in rejecting his claim that the evidence was insufficient to prove that he had not acted under the influence of extreme emotional disturbance and in rejecting his claim of prosecutorial misconduct. The District Court dismissed the petition, but a divided panel of the Sixth Circuit re-

versed with instructions to grant relief.  651 F. 3d 489 (2011).

## II

Under AEDPA, the Sixth Circuit had no authority to issue the writ of habeas corpus unless the Kentucky Supreme Court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U. S. C. §2254(d). The Sixth Circuit gave two grounds for its conclusion that Matthews was entitled to relief under this "difficult to meet . . . and highly deferential standard," *Cullen* v. *Pinholster*, 563 U. S. \_\_\_, \_\_\_ (2011) (slip op., at 9) (internal quotation marks omitted). Neither is valid.

## A

First, the Sixth Circuit held that the Kentucky Supreme Court had impermissibly shifted to Matthews the burden of proving extreme emotional disturbance, and that the Commonwealth had failed to prove the absence of extreme emotional disturbance beyond a reasonable doubt. The Sixth Circuit reasoned that, at the time Matthews committed his offenses, the allocation of the burden of proof on extreme emotional disturbance was governed by the Kentucky Supreme Court's decision in *Gall* v. *Commonwealth*, 607 S. W. 2d 97, 108 (1980), which placed the burden of producing evidence on the defendant, but left the burden of proving the absence of extreme emotional disturbance with the Commonwealth in those cases in which the defendant had introduced evidence sufficient to raise a reasonable doubt on the issue. According to the Sixth Circuit, however, the Kentucky Supreme Court departed from that understanding in Matthews' case and placed the

burden of proving extreme emotional disturbance "entirely on the defendant," 651 F. 3d, at 500.

The Sixth Circuit's interpretation is supported by certain aspects of the Kentucky Supreme Court's opinion in Matthews' case. For example, the state court indicated that Matthews had "present[ed] extensive evidence" of his extreme emotional disturbance, yet the court rejected his sufficiency-of-the-evidence claim by finding the evidence he had presented "far from overwhelming," rather than by stating that it failed to raise a reasonable doubt. *Matthews*, 709 S. W. 2d, at 420–421. The state court also observed that it had recently clarified in *Wellman* v. *Commonwealth*, 694 S. W. 2d 696 (1985), that "absence of extreme emotional disturbance is not an element of the crime of murder which the Commonwealth must affirmatively prove." *Matthews*, *supra*, at 421. In the Sixth Circuit's view, the Kentucky Supreme Court's reliance on this *Wellman* formulation of extreme emotional disturbance in resolving Matthews' appeal violated the Due Process Clause, as construed by this Court in *Bouie* v. *City of Columbia*, 378 U. S. 347, 354 (1964), because it involved the retroactive application of an "'unexpected and indefensible'" judicial revision of the Kentucky murder statute.

The Kentucky Supreme Court's initial assessment of the evidence and reliance upon *Wellman* would be relevant if they formed the sole basis for denial of Matthews' sufficiency-of-the-evidence claim. It is not clear, however, that they did. The Kentucky Supreme Court explained that "[t]he trial court's instructions in regard to extreme emotional disturbance were adequate, and the proof supported the jury's findings of intentional murder." 709 S. W. 2d, at 421. Those jury instructions required the jury to find beyond a reasonable doubt that Matthews had not acted "under the influence of extreme emotional disturbance for which there was a reasonable justification or excuse under the circumstances as he believed them to be." 6 Record

625, 628–629. The case had been submitted to the jury
with the burden assigned to the Commonwealth, the jury
had found that burden carried, and the Kentucky Su-
preme Court found the evidence adequate to sustain that
finding. That ground was sufficient to reject Matthews'
claim, so it is irrelevant that the court also invoked a
ground of questionable validity. See *Wetzel* v. *Lambert*,
565 U. S. ___, ___–___ (2012) *(per curiam)* (slip op., at
4–5).[1]

The Sixth Circuit's opinion also challenges the conclu-
sion that the evidence supported a finding of no extreme
emotional disturbance. We have said that "it is the
responsibility of the jury—not the court—to decide what

_____

[1] An ambiguously worded footnote in the Sixth Circuit's opinion, see
651 F. 3d 489, 504, n. 5 (2011), suggests that the court may have found
an additional due process violation. The court referred to a statement
in the Kentucky Supreme Court's decision in *Gall* v. *Commonwealth*
607 S. W. 2d 97, 109 (1980), that "[u]nless the evidence raising the
issue [of extreme emotional disturbance] is of such probative force that
otherwise the defendant would be entitled as a matter of law to an
acquittal on the higher charge (murder), the prosecution is not required
to come forth with negating evidence in order to sustain its burden of
proof." Relying on its own opinion in Gall's federal habeas proceeding,
*Gall* v. *Parker*, 231 F. 3d 265 (CA6 2000) *(Gall II),* the Sixth Circuit
suggested that the quoted statement "require[d] a defendant to bear the
heavy burden of disproving an element of a crime beyond a reasonable
doubt," 651 F. 3d, at 504, n. 5, in violation of this Court's decision in
*Mullaney* v. *Wilbur*, 421 U. S. 684 (1975). That is not so. The state-
ment explicitly acknowledges that the burden of proof rests with the
prosecution, but merely asserts that when the burden of production is
assigned to the defendant the jury may find the prosecution's burden of
proof satisfied without introduction of negating evidence, unless the
defendant's evidence is so probative as to establish reasonable doubt as
a matter of law. That seems to us a truism. See 2 J. Strong, McCor-
mick on Evidence §338, pp. 419–420 (5th ed. 1999). Our opinion in
*Mullaney* addressed a situation in which the burden of persuasion *was*
shifted to the defendant, see 421 U. S., at 702, and n. 31; it does not
remotely show that the Kentucky Supreme Court's truism contravened
clearly established federal law.

conclusions should be drawn from evidence admitted at trial," *Cavazos* v. *Smith*, 565 U. S. 1, ___ (2011) *(per curiam)* (slip op., at 1). The evidence is sufficient to support a conviction whenever, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson* v. *Virginia*, 443 U. S. 307, 319 (1979). And a state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the "decision was 'objectively unreasonable.'" *Cavazos*, *supra,* at ___ (slip op., at 1).

In light of this twice-deferential standard, it is abundantly clear that the Kentucky Supreme Court's rejection of Matthews' sufficiency claim is controlling in this federal habeas proceeding. The Sixth Circuit noted that Dr. Chutkow expressed an opinion that Matthews was under the influence of extreme emotional disturbance at the time of the murders, and did not retreat from that opinion on cross-examination. But there was ample evidence pointing in the other direction as well. As the Kentucky Supreme Court observed, Matthews' claim of extreme emotional disturbance was belied by "the circumstances of the crime," 709 S. W. 2d, at 421—including the facts that he borrowed money to purchase the murder weapon the day of the murders, that he waited several hours after buying the gun before starting for his wife's home, and that he delayed several hours between shooting his mother-in-law and killing his wife. The claim was also belied by his behavior after the murders, including his "[taking] steps to hide the gun and clean his clothes," and later "giv[ing] a false statement to the police." *Ibid.* The Sixth Circuit discounted this evidence because Dr. Chutkow testified that Matthews' deliberateness and consciousness of wrongdoing were not inconsistent with the diagnosis of extreme emotional disturbance. 651 F. 3d., at 504, n. 4. But expert testimony does not trigger a conclusive pre-

sumption of correctness, and it was not unreasonable to conclude that *the jurors* were entitled to consider the tension between Dr. Chutkow's testimony and their own common-sense understanding of emotional disturbance. In resolving the conflict in favor of Dr. Chutkow's testimony, the Sixth Circuit overstepped the proper limits of its authority. See *Jackson, supra,* at 326.

More fundamentally, the Sixth Circuit did not appear to consider the possibility that the jury could have found the symptoms described by Dr. Chutkow inadequate to establish what is required to reduce murder to manslaughter under Kentucky law: that Matthews "acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." Ky. Rev. Stat. Ann. §507.020(1)(a). Dr. Chutkow himself agreed that many people face tension and anxiety—two symptoms he attributed to Matthews. 6 Record 579–580. And he agreed that many people suffer from adjustment disorders. *Id.,* at 592. But of course very few people commit murders. In light of these points, which bear on the proper characterization of Matthews' mental condition and the reasonableness of his conduct, the Kentucky Supreme Court made no objectively unreasonable error in concluding that the question of extreme emotional disturbance was properly committed to the jury for resolution.

## B

As a second ground for its decision, the Sixth Circuit held that certain remarks made by the prosecutor during his closing argument constituted a denial of due process. This claim was rejected on the merits by the Kentucky Supreme Court (albeit without analysis) and therefore receives deferential review under the AEDPA standard.

See *Harrington* v. *Richter*, 562 U. S. ___, ___ (2011) (slip op., at 8). The "clearly established Federal law" relevant here is our decision in *Darden* v. *Wainwright*, 477 U. S. 168 (1986), which explained that a prosecutor's improper comments will be held to violate the Constitution only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.,* at 181 (quoting *Donnelly* v. *DeChristoforo*, 416 U. S. 637, 643 (1974)).

According to the Sixth Circuit, the prosecutor violated *Darden* by suggesting that Matthews had colluded with his lawyer, David Busse, and with Dr. Chutkow to manufacture an extreme emotional disturbance defense. But although the Sixth Circuit quoted a lengthy section of the prosecutor's closing argument which could be understood as raising a charge of collusion,[2] the court did not address

––––––––––

[2] The full text of the section the Sixth Circuit found objectionable is as follows:

"He's arraigned, he meets with his attorney and either he tells his attorney, I did it or I didn't do it. One or the other. But, the attorney knows what the evidence is. By the way, the defendant knows what the evidence is, because while he's giving this statement, it's sitting right in front of him at the Homicide Office. Here's the gun. Here's the shoes, David. 'Nah, nah, I never saw it before. I never borrowed a gun. I never borrowed any money. I wasn't there. I was at home in bed asleep.' He's denying it there.

"And what does his attorney think? His attorney sees all this evidence, and he's going through his mind, what kind of legal excuse can I have? What is this man's defense? Self protection? No, there's no proof of a gun found at that house on 310 North 24th Street. No proof of that. Protection of another? The defendant's mother is at home on Lytle Street. He isn't protecting her over there on North 24th Street. Intoxication? Yeah, well, he was drinking that night. Maybe that will mean something.

"But that isn't enough, Ladies and Gentlemen. Mr. Busse has to contact a psychiatrist to see his client, and he comes in and sees his client one month after the day of his arrest, one month to the day, and by that time, Mr. David Eugene Matthews sees his defense in the form of Doctor Chutkow, and do you think this guy is aware of what's going

the prosecutor's statement that immediately followed the quoted portion and expressly disavowed any suggestion of collusion:

> "And that's not to say that Mr. Busse is unethical. Not at all. He is entitled to the best defense he can get, but that's the only defense he has, what the doctor has to say, and that's not to say that the doctor gets on the stand and perjures himself. He's telling you the truth. He wouldn't perjure himself for anything. He's telling you the truth, Ladies and Gentlemen." 7 Record 674.

With the prosecutor's immediate clarification that he was *not* alleging collusion in view, the Sixth Circuit's conclusion that this feature of the closing argument clearly violated due process is unsupportable. Nor does the prosecutor's suggestion that Matthews had "enhance[d] his story to Doctor Chutkow," *ibid.,* suffice to justify the Sixth Circuit's grant of habeas relief. In context, that statement is clearly a part of a broader argument that Matthews had a motive to exaggerate his emotional disturbance in his meetings with Dr. Chutkow. Shortly after the quoted statement, the prosecutor continued with a series of rhetorical questions:

> "Don't you think he would exaggerate his fears about his wife, his mother-in-law, and all these other things

_____

on? He's competent. He can work with his attorney, and he enhances his story to Doctor Chutkow. Yeah, I was drinking. I was drinking a lot. I was taking a lot of pills, too, and let me tell you about the pills I was taking.

"Don't you think he has a purpose in enhancing his story to the psychiatrist? Don't you think he would exaggerate his fears about his wife, his mother-in-law, and all these other things about what other people might be doing to his mother? Don't you think he would overstate the extent of his intoxication to his psychiatrist? It's the defense of last resort, Ladies and Gentlemen. He has no excuse for his conduct, but that's his only way out." 7 Record 673–674.

> about what other people might be doing to his mother? Don't you think he would overstate the extent of his intoxication to his psychiatrist?" *Ibid.*

The Sixth Circuit cited no precedent of this Court in support of its conclusion that due process prohibits a prosecutor from emphasizing a criminal defendant's motive to exaggerate exculpatory facts.

The Sixth Circuit also suggested that the prosecutor "denigrated the [extreme emotional disturbance] defense itself," 651 F. 3d, at 506, by stating that "[i]t's the defense of last resort, Ladies and Gentlemen. He has no excuse for his conduct, but that's his only way out." 7 Record 674. But the Kentucky Supreme Court could have understood this comment too as having been directed at Matthews' motive to exaggerate his emotional disturbance—*i.e.,* as emphasizing that the unavailability of any other defense raised the stakes with respect to extreme emotional disturbance.

Moreover, even if the comment is understood as directing the jury's attention to inappropriate considerations, that would not establish that the Kentucky Supreme Court's rejection of the *Darden* prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U. S., at \_\_\_ (slip op., at 13). Indeed, *Darden* itself held that a closing argument considerably more inflammatory than the one at issue here did not warrant habeas relief. See 477 U. S., at 180, n. 11 (prosecutor referred to the defendant as an "'animal'"); *id.,* at 180, n. 12 ("'I wish I could see [the defendant] with no face, blown away by a shotgun'"). Particularly because the *Darden* standard is a very general one, leaving courts "more leeway . . . in reaching outcomes in case-by-case determinations," *Yarborough* v. *Alvarado*, 541 U. S. 652,

664 (2004)), the Sixth Circuit had no warrant to set aside the Kentucky Supreme Court's conclusion.

The Sixth Circuit also erred by consulting its own precedents, rather than those of this Court, in assessing the reasonableness of the Kentucky Supreme Court's decision. After quoting the governing standard from our decision in *Darden*, the Sixth Circuit added that it would "engag[e] in a two step inquiry to determine whether the prosecutorial misconduct rises to the level of unconstitutionality. 'To satisfy the standard . . . , the conduct must be both improper and flagrant.'" 651 F. 3d, at 505 (quoting *Broom* v. *Mitchell*, 441 F. 3d 392, 412 (CA6 2006)). It went on to evaluate the flagrancy step of that inquiry in light of four factors derived from its own precedent: "'(1) the likelihood that the remarks . . . tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against [Matthews].'" 651 F. 3d, at 506 (quoting *Broom*, *supra,* at 412). And it stated that "the prosecutor's comments in this case were sufficiently similar to" certain comments held unconstitutional in its prior decision in *Gall II*, 231 F. 3d 265 (CA6 2000), "that they rise to the level of impropriety." 651 F. 3d, at 506.

As we explained in correcting an identical error by the Sixth Circuit two Terms ago, see *Renico*, 559 U. S., at ___ (slip op., at 11–12), circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court," 28 U. S. C. §2254(d)(1). It therefore cannot form the basis for habeas relief under AEDPA. Nor can the Sixth Circuit's reliance on its own precedents be defended in this case on the ground that they merely reflect what has been "clearly established" by our cases. The highly generalized standard for evaluating claims of prosecutorial misconduct set forth in *Darden* bears scant resemblance to the elaborate, multistep test employed by

Per Curiam

the Sixth Circuit here. To make matters worse, the Sixth Circuit decided *Gall II* under pre-AEDPA law, see 231 F. 3d, at 283, n. 2, so that case did not even *purport* to reflect clearly established law as set out in this Court's holdings. It was plain and repetitive error for the Sixth Circuit to rely on its own precedents in granting Matthews habeas relief.

\*    \*    \*

The petition for a writ of certiorari and respondent's motion to proceed *in forma pauperis* are granted. The judgment of the Court of Appeals for the Sixth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*