**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0761n.06

**No. 10-1198**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

REGINALD WALKER,

      Petitioner-Appellant,

v.

BONITA HOFFNER, Warden,

      Respondent-Appellee.

                                           /

> **FILED**
> **Aug 16, 2013**
> DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

BEFORE:    KEITH, CLAY, and COOK, Circuit Judges.

**CLAY, Circuit Judge.** On March 1, 2001, Petitioner Reginald Walker was convicted of first degree murder in violation of Mich. Comp. Laws § 750.316, and possession of a firearm in the commission of a felony in violation of Mich. Comp. Laws § 750.227b, for the fatal shooting of Larry Troup. Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 21, 2006, claiming that his counsel had been ineffective because he failed to investigate and present an insanity defense despite Petitioner's known, extensive, and well-documented history of mental illness. On January 14, 2010, the United States District Court for the Eastern District of Michigan denied his petition. On February 18, 2010, that court granted Petitioner a Certificate of Appealability pursuant to 28 U.S.C. § 2253(c)(1) on the question of whether the state court's decision that Petitioner had not been prejudiced by his attorney's failure to raise an insanity defense

was an unreasonable application of federal law. On September 2, 2011, this Court reversed the decision of the district court, and granted the writ. *Walker v. McQuiggan*, 656 F.3d 311 (6th Cir. 2011). The United States Supreme Court granted a writ of certiorari, vacated this Court's decision, and remanded the case back to this Court. *Howes v. Walker*, 132 S. Ct. 2741 (2012) (Mem.). In its remand order, the Supreme Court directed us to reconsider the case in light of their decision in *Parker v. Matthews*, 567 U.S. —, 132 S. Ct. 2148 (2012).

Upon reconsideration, we **REVERSE** the decision of the district court, and **GRANT** Petitioner's application for a writ of habeas corpus.

## BACKGROUND

### A.     Facts

The facts of this case were laid out in detail in our prior decision. *Walker v. McQuiggan*, 656 F.3d 311, 312–13 (6th Cir. 2011) (*Walker I*). The underlying crime was the killing of Larry John Troup by Petitioner Reginald Walker on the night of April 11, 2000. *Id.* at 312. Quoting extensively from the decisions of the Michigan Court of Appeals, we found that:

> The prosecution presented testimony that at about midnight, Walter Gaiter and Troup entered the store to purchase some beer. After paying for the beer at the checkout counter, Gaiter leaned back into defendant, who was behind them. After Gaiter apologized for bumping into defendant, defendant told him that he did not like being touched, which defendant repeated after he paid for his purchases. Pausing, defendant then pulled an automatic handgun from under this [sic] jacket and fired three or four shots, killing Troup instantly. Neither Gaiter nor Troup was armed. Defendant then picked up the clip that had fallen to the floor, put it in his pocket, and walked out the store.

2

*Id.* (quoting *People v. Walker*, No. 233494, 2003 WL 133057, at \*1 (Mich. Ct. App. Jan. 3, 2003) (*per curiam*)).

Petitioner had a long history of mental illness. Despite being only 46 years old at the time of trial, he received Social Security Disability benefits as a result of mental health issues. *Id.* at 315. His medical history indicated that Petitioner had been hospitalized many times, starting in 1983, for various "schizophrenic" illnesses. While he had been prescribed anti-psychotic medications since 1983, he had not always taken them. Treatment at several different hospitals had resulted in diagnoses of "paranoid schizophrenia, generalized schizophrenia, schizoaffective disorder, depression, bi-polar disorder, and alcohol dependence." *Id.* At multiple times, Petitioner reported to doctors that he had suicidal or homicidal feelings, and that he had been hearing voices. Within the six months preceding the shooting, Petitioner's mother, who was an appointed guardian to him, had him involuntarily committed to a treatment facility because of acute psychotic symptoms. *Id.* at 315.

All of the evidence at trial identified Petitioner as the culprit. Both the store clerk and Gaiter testified that Petitioner was the shooter, and that there had been a brief, non-violent encounter between Gaiter and Petitioner, when Gaiter had accidently bumped into Petitioner, and that after a brief exchange of words, Petitioner shot Troup. Both also testified that Petitioner then picked up the ammunition clip that had fallen out of the gun, and walked out of the store. The police arrested Petitioner shortly afterwards in a nearby semi-abandoned house. Petitioner's hand was bleeding, because he had punched a hole in the drywall in the house, and hidden the gun inside. No evidence suggested that Petitioner had been attacked by Troup or Gaiter. *Id.* at 313.

Petitioner admitted to the killing, but "presented a mixed defense of accident, self-defense and intoxication." *Id.* at 313. Despite having the option to request that an independent clinical psychiatrist of his choice evaluate Petitioner, Defense counsel chose to rely on the examination of Dr. Dexter Lee Fields, the Wayne County Circuit Court Psychiatrist, who had found that Petitioner was criminally responsible at the time of the shooting. *Id.* at 314. Fields had examined Petitioner before, and on at least one occasion had concluded that Petitioner was mentally ill. *Id.* at 314 n.3 Defense counsel did not use an insanity defense;[1] instead, he chose to present a "mixed accident/self-defense/intoxication theory." *Id.* at 314. Walker was convicted of first-degree murder, Mich. Comp. Laws § 750.316, and possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b, and was sentenced to life in prison without the possibility of parole, and an additional two years' imprisonment on the firearm charge. *Walker I*, 656 F.3d at 313.

On direct review of his conviction, Walker alleged that his attorney had provided ineffective assistance of counsel because he had failed to investigate or raise an insanity defense. *Id.* at 315. The Michigan Court of Appeals found that counsel's failure to investigate the possibility of an insanity defense constituted deficient performance, and remanded the case to the trial court for a *Ginther* hearing[2] as to whether Petitioner had been prejudiced by counsel's deficiencies. *People v. Walker*, No. 233494, 2003 WL 133057, at *3 (Mich. Ct. App. Jan. 3, 2003) (*per curiam*). After the *Ginther* hearing, the trial court found no prejudice, and the Michigan Court of Appeals affirmed that

---

[1]Petitioner's attorney at that point was William Winters. He declined to pursue an insanity defense, although his predecessor as defense counsel had filed a notice of intent to do so. *Id.*

[2]Named for *People v. Ginther*, 390 Mich. 436 (1973), a *Ginther* hearing is a type of evidentiary hearing under Michigan law for claims of ineffective assistance of counsel.

decision. *People v. Walker*, No. 249406, 2005 WL 657727, at \*2 (Mich. Ct. App. Mar. 22, 2005) (*per curiam*). The Michigan Supreme Court declined to hear the case, issuing the following order: "Disposition: On order of the Court, the application for leave to appeal the March 22, 2005 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court." 474 Mich. 873 (2005) (table). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") this Court reviews the last reasoned state court decision. *See Cullen v. Pinholster*, 563 U.S. —, 131 S. Ct. 1388, 1402 (2011) ("Section 2254(d) applies even where there has been a summary denial."). In this case, the Michigan Court of Appeals' decision in 2005, *People v. Walker*, No. 249406, 2005 WL 657727, (Mich. Ct. App. Mar. 22, 2005) is the last reasoned state court decision.

## B.   Procedural History in the Federal Courts

In December 2006, Petitioner asked the United States District Court for the Eastern District of Michigan to grant a writ of habeas corpus, based on the same claim of ineffective assistance of counsel that he alleged in the state courts. In January 2010, the district court accepted the report and recommendation of the magistrate judge,[1] which found that the Michigan court had correctly identified the constitutional rule governing claims for ineffective assistance of counsel, and had not unreasonably applied the law to the facts of the case and denied the petition, but granted a certificate of appealability on the question of whether the state court's decision that Petitioner had not been prejudiced by his attorney's failure to raise an insanity defense was an unreasonable application of

---

[1]The magistrate recommended that the district court deny the petition, because the state court's finding that there was no prejudice to Petitioner was not unreasonable. (R. 14, Report & Recommendation, Nov. 13, 2009, at 8.)

federal law. Walker appealed to this Court, and we granted the writ. *See Walker I*, 656 F.3d at 322. The Supreme Court granted certiorari, vacated our decision, and remanded "for further consideration in light of *Parker v. Matthews*, 567 U.S. —, 132 S.Ct. 2148 (2012)." *Howes v. Walker*, 132 S. Ct. 2741 (2012).

## DISCUSSION

### A. Standard of Review

Where a district court has denied a habeas petition, and issued a certificate of appealability, "we review the district court's legal conclusions *de novo* and its factual findings for clear error." *Hanna v. Ishee*, 694 F.3d 596, 605 (6th Cir. 2012) (citing *Smith v. Mitchell*, 567 F.3d 246, 255 (6th Cir. 2009)). The district court's findings of fact are clearly erroneous when "we are left with the definite and firm conviction that a mistake has been committed." *United States v. Canipe*, 569 F.3d 597, 600 (6th Cir. 2009) (citing *United States v. Ellis*, 497 F.3d 606, 611 (6th Cir. 2007)).

Under the AEDPA, a federal court may not grant a writ of habeas corpus with respect to any claim adjudicated on the merits in state court unless the state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A federal court may not issue the writ "simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "[C]learly established federal law, as determined by the Supreme Court

of the United States" refers to the holdings, rather than dicta, of the decisions of the Supreme Court. *Howes v. Fields*, — U.S. —, 132 S. Ct 1181, 1187 (2012) (quoting *Williams*, 529 U.S. at 362).

A decision that is "contrary to" clearly established federal law where "the state court arrives at a conclusion opposite to that reached by this Court on a question of law . . . [or] confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a [the opposite] result." *Williams*, 529 U.S. at 405. Furthermore, an unreasonable application must be distinguished from an incorrect application. *Harrington v. Richter*, 562 U.S. —, 131 S. Ct. 770, 785 (2011) (quoting *Williams*, 529 U.S. at 410). A state court decision which is merely incorrect, rather than unreasonable, is still entitled to deference by a federal court in a habeas proceeding. *Id.* As a result, the more general the rule, the greater the leeway accorded to a state court's decision under federal habeas review. *Id.* at 786.

## C. The Decision of the Michigan Court of Appeals

It is clearly established law that the question of ineffective assistance of counsel is analyzed pursuant to the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner must show that counsel's performance was deficient, and that he was prejudiced because of this ineffective assistance of counsel. *Id.* at 687–92; *Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000) ("A defendant claiming ineffective assistance of counsel must show (1) that counsel's representation 'fell below an objective standard of reasonableness,' and (2) that counsel's deficient performance prejudiced the defendant.") (citing *Strickland*) (internal citations omitted); *Kimmelman v. Morrison*, 477 U.S. 365, 383 (1986).

7

The Michigan state court's decision in 2005 both violated and unreasonably applied clearly established federal law,[2] and accordingly, the writ should issue. In *Walker I*, we held that the Michigan Court of Appeals both unreasonably applied clearly established federal law and unreasonably determined facts in light of the evidence. We found that the Michigan court improperly applied the prejudice prong of *Strickland*, 466 U.S. at 687. In doing so, however, we incorrectly applied our own standard, which states that a defendant suffers prejudice when he is deprived of a "substantial defense" by the deficient performance of his counsel. *Walker I*, 656 F.3d at 321. The Supreme Court held in *Parker* that a circuit court cannot use its own precedents, but must only use those of the Supreme Court, "in assessing the reasonableness of the [state court's] decision." *Parker*, 132 S. Ct. at 2155. Upon reconsideration, under the standard as given by the Supreme Court, we nevertheless find that the Michigan court's decision does not survive habeas review.

*Strickland* has long held that counsel's performance is deficient where it falls below an objectively unreasonable standard. *Strickland*, 466 U.S. at 686–87; *Richter*, 131 S. Ct. at 787. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 689). Petitioner bears the burden of overcoming the "presumption that the challenged conduct might be considered sound trial strategy." *Hanna*, 694 F.3d at 612. That is to say, Petitioner must show that counsel made errors "so serious that counsel

---

[2]We first find that the Michigan court failed to apply the correct rule, but we also find that even were we to construe its decision as stating the rule correctly, the result would be an unreasonable application of federal law.

was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Richter*, 131 S. Ct. at 787 (internal quotation marks omitted).

"To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler v. Cooper*, 132 S. Ct. 1376, at 1384 (2012) (quoting *Strickland*, 466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 694). "Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 787–88 (internal quotation marks omitted).

In its decision in 2003, the Michigan Court of Appeals found that counsel's failure to investigate the possibility of an insanity defense consituted deficient performance, but remanded the case for further findings with respect to the question of prejudice. *Walker*, 2003 WL 133057, at *3. After the lower court conducted a *Ginther* hearing, where it determined that Petitioner had not suffered prejudice, the Michigan Court of Appeals issued the decision we review today. In that decision, the court determined that counsel's performance was inadequate,[3] *Walker*, 2005 WL 657727, at *1 n.6, but on the question of prejudice, it found that Petitioner had not shown that "the defense was meritorious and the failure to present it deprived [him] of a reasonably likely chance of acquittal." *Id.* at *1.

---

[3]The Michigan Court of Appeals based at least part of this decision on the law-of-the-case doctrine, finding that it was bound by the earlier panel's determination of deficient performance.

This was an incorrect statement of the constitutional rule, and a court's failure to analyze a claim of ineffective assistance under the correct standard, under appropriate circumstances, can give rise to a grant of habeas corpus. *Williams*, 529 U.S. at 397. The Supreme Court has stated that deficient performance is prejudicial when: "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, a reasonable probability of acquittal is not a requirement to be shown by a defendant seeking to demonstrate prejudice resulting from his counsel's deficient performance; rather, a defendant is required to demonstrate a reasonable probability of a different outcome—a somewhat lower burden for a defendant. And even if the difference between a reasonable probability and "reasonably likely" is not, by itself, enough for us to characterize the Michigan court's decision as so unreasonable as to give rise to a grant of habeas, *Williams*, 529 U.S. at 411, the Michigan court also erred in stating that this reasonable probability was related to the chance of an acquittal, rather than only related to undermining confidence in the result.[4] There were other possible outcomes, including a hung jury, or guilty by reason of mental insanity, that would have been better outcomes

---

[4]Furthermore, the state court decision did not otherwise recite the *Strickland* standard, so we cannot conclude that this statement of the rule was some form of permissible shorthand. *See Holland v. Jackson*, 542 U.S. 649, 654–55 (2004). The court referenced the *Strickland* standard in two other parts of the decision. In footnote 6, the court describes the prejudice prong as requiring a defendant to show that his attorney's representation "was so prejudicial to him that he was denied a fair trial." *Walker*, 2005 WL 6577727, at *1 n.6. The court also stated that "[it] conclude[s] that there was not a reasonable probability that defendant had a likely chance of acquittal." *Id.* at *2. Neither of these constructions can be fairly described as effective shorthand for the actual *Strickland* standard. *See Woodford v. Visciotti*, 537 U.S. 19, 23–24 (2002).

for Petitioner. The Michigan court stated outright that "defendant failed to show that he had a meritorious insanity defense, and thus, failed to show that counsel was ineffective for failing to present such a defense." *Walker*, 2005 WL 657727, at *1. Nevertheless, in any event, there is no way that Petitioner could demonstrate that he was likely to prevail with a defense that he was prevented from presenting because of his lawyer's deficient performance.

The Supreme Court has never held that prejudice under *Strickland* requires a court to examine whether acquittal was likely; the standard has always been concerned with the probability of a different result based on the fairness of the proceeding. *See Woodford*, 537 U.S. at 22–24. ("Undermin[ing] confidence in the outcome is exactly *Strickland*'s description of what is meant by the reasonable probability standard. A reasonable probability is a probability sufficient to undermine confidence in the outcome.") (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted, alteration in original); *see also Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Defendant was not required to show that but for the failure to present the insanity defense, he would have been acquitted, but only that because he was unable to present such a defense, his trial was unfair such that we can no longer be confident in the verdict.

Moreover, even were we to consider the Michigan Court of Appeals' statement of the *Strickland* prejudice standard as reasonably correct, the court also improperly applied the standard. First, virtually all of its reasoning focused on reasons why defense counsel did not pursue the insanity defense as a strategy. *Walker*, 2005 WL 657727, at *1. But that is immaterial to the question of prejudice. It is only relevant insofar as it might show that defense counsel's performance was not deficient. As the court acknowledged, there had already been a finding of deficient

11

performance by the Michigan Court of Appeals in its 2003 decision, and under the law-of-the-case doctrine, the court had no basis upon which to disturb that finding. *Id.* Having found deficient performance, the court was required to analyze prejudice, which it failed to do in anything but the most conclusory terms, and its failure to do so was error. *See, e.g.*, *Sears v. Upton*, 561 U.S. —, 130 S. Ct. 3259, 3264–65 (2010).

No "fairminded jurist," *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) (internal quotation marks omitted)), could be confident in the verdict given by the jury here. The jury never heard any evidence about Petitioner's long and well-documented history of severe mental illness, which included incidents of psychosis, hallucinations, and schizophrenia, over a period of approximately thirty years preceding the trial, starting when Petitioner was sixteen years old. Nor did the jury hear any evidence of his course of treatment, which included multiple hospitalizations as well as out-patient care from various facilities, or regarding his medication history, including his irregular usage of prescribed anti-psychotic drugs. Petitioner's mental health was seriously impaired enough for him to receive Social Security disability benefits, and he was under the guardianship of his mother due to his psychiatric disability. All of this evidence was presented to the trial court at the *Ginther* hearing, but not to the jury, and to find that there was no reasonable probability of a different outcome that would have been favorable to Petitioner, such as guilty but mentally ill, had this evidence been presented, was an unreasonable application of clearly established federal law. *See Kyles v. Whitley*, 514 U.S. 419, 434 (1995); c*f. Porter v. McCollum*, 558 U.S. 30, 41 (2009) (*per curiam*) (granting habeas relief on *Strickland* grounds where defense counsel failed to present any mitigation evidence at a capital sentencing).

In sum, the Michigan Court of Appeals' decision in 2005 failed to apply the correct rule. Having found, in its earlier decision, that defense counsel's performance was deficient, the court was required to examine whether there would have been a reasonable probability of a different outcome had defense counsel presented an insanity defense. Furthermore, even if we construed the court's reasoning as stating the correct rule, the court failed to properly apply the rule, because it focused its inquiry on improper factors. Finally, it was unreasonable for the court to find that there was no reasonable chance of a different outcome given Petitioner's extensive history of mental illness that the jury was never confronted with. Accordingly, we reverse the district court's denial of the writ. However, in light of the Supreme Court's instructions to reconsider our prior decision in light of *Parker v. Matthews*, 567 U.S. —, 132 S. Ct. 2148 (2012) (*per curiam*), we will specifically address the application of that decision to the instant case.

### D.    The Supreme Court's Decision in *Parker v. Matthews*

In *Parker v. Matthews*, the Supreme Court reversed a decision of this Court, *Matthews v. Parker*, 651 F.3d 489 (6th Cir. 2011), which concerned a capital murder conviction in Kentucky. In that case, this Court granted a writ of habeas corpus to Petitioner David Matthews with respect to two of his claims. First, we found that the Kentucky court had improperly shifted the burden of proof onto Matthews to show extreme emotional disturbance ("EED"), in violation of the familiar rule of *In re Winship*, 397 U.S. 358 (1970). *Matthews*, 651 F.3d at 504. We further found that it was

unreasonable for the Kentucky courts not to find that prosecutorial misconduct had rendered the proceeding unfair.[5]  *Id.* at 507.

While the facts of that case have been recounted by courts many times before, some bear repeating here.  Petitioner David Matthews drank in a bar, where he also took Valium and Dexedrine. *Matthews*,651 F.3d at 494. While at the bar, he borrowed $50.00 from a his companion, a woman he had been seeing, having told her that he wanted to use the money to buy a gun. *Id.*  He then broke into his wife's home and killed his mother-in-law. *Id.*  After killing his mother-in-law, he had sex with his wife, and stayed with her for several hours, until about 6:00 a.m., when he shot and killed her. *Id.*  He then went back to his mother's house, hid the gun in the yard of the house, asked his mother to wash his clothes, took more Valium, and went to sleep. *Id.*  Later that day, he was taken into custody, and was eventually indicted for the two murders and burglary. *Id.*

Under the Kentucky murder statute as it existed at the time of the killings, the absence of EED was an element of the crime.[6]  *See id.* at 499.  However, based on the Kentucky Supreme

---

[5]The prosecutor made several inappropriate remarks during closing arguments that impermissibly denigrated petitioner's claim of EED.

[6]The Kentucky statute stated that a person commits murder when:

> with the intent to cause the death of another person, he causes the death of such person or of a third person; except that in any prosecution a person shall not be guilty under this subsection if he acted under the influence of extreme emotional disturbance, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be.

Ky. Rev. Stat. § 507.020(1)(a) (quoted in *Matthews*, 651 F.3d at 499).

Court's decision in *Gall v. Commonwealth*, 607 S.W.2d 97, 108–09 (Ky. 1980) ("*Gall I*"), the government bore the burden of proof on the absence of EED, but a jury did not need to find the absence of EED beyond a reasonable doubt unless the defendant had met an initial burden of production on the issue. Sometime after Matthews committed the murders, the Kentucky Supreme Court explicitly placed the burden of proof with respect to EED on defendants.[7] *Matthews*, 651 F.3d at 500. In Matthews' case, the later rule was in place by the time that the Kentucky Supreme Court decided his direct appeal, but *Gall I* had been good law when Matthews committed his crimes. Therefore, under the familiar rule of *Bouie v. City of Columbia*, 378 U.S. 347, 354–54 (1964), the Kentucky courts were required to use the *Gall I* rule in deciding Matthews' case. *Matthews*, 651 F.3d at 500. However, the Kentucky Supreme Court, in examining Matthew's argument that the state had failed to carry its burden of proof with respect to EED, applied the later rule.

This Court found that this violated clearly established federal law. *Id.* In particular, we found that under *In re Winship*, 397 U.S. 358, 364 (1970), the state must prove every element of a crime beyond a reasonable doubt, and that once Matthews had introduced sufficient evidence of EED to trigger its absence as an element of the crime, the prosecution had to prove the absence of EED beyond a reasonable doubt. Because the prosecution had introduced no independent evidence to contradict Matthews' evidence of EED, and had not undermined Matthews' evidence, no rational trier of fact could have found that the state had proven the absence of EED beyond a reasonable

---

[7]The Kentucky Supreme Court, in *Wellman v. Commonwealth*, 694 S.W.2d 696 (Ky.1985), stated that "[t]o the extent that . . . cases declare absence of extreme emotional distress to be an element of the crime of murder, they are expressly overruled." *Id.* at 697.

doubt. *Matthews*, 651 F.3d at 503–04. This Court further found that the Kentucky Supreme Court had unreasonably applied federal law by failing to grant Matthews' appeal on the basis of prosecutorial misconduct. During closing arguments the prosecutor made several remarks denigrating Matthews' use of an EED defense. In evaluating that claim, we applied the test for prosecutorial misconduct used in *Broom v. Mitchell*, 441 F.3d 392 (6th Cir. 2006).

The United States Supreme Court reversed our decision, finding that the Kentucky courts had not violated clearly established law in allocating the burden of proof on the EED element because the jury had been properly instructed, *Parker*, 132 S. Ct. at 2151–52; and because habeas challenges to the sufficiency of evidence must be doubly deferential, a court must defer to the findings of the jury, which will not be disturbed unless no rational trier of fact could have reached the result. *Id.* at 2152 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The Supreme Court found that because the jury had been properly instructed on EED, and the proof offered at trial could support a finding that the state had proven the element, the Kentucky Court's invocation of the improper standard was immaterial. *Id.* at 2151–52. Discussing our grant of the writ based on prosecutorial misconduct, the Supreme Court found that our decision was flawed because the Kentucky court's decision "was [not] so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 2155 (quoting *Harrington*, 131 S. Ct. at 786–87 (2011) (internal quotation marks omitted)).

In particular, the Supreme Court criticized this Court for reliance on our own circuit court precedents as to what constitutes clearly established law. *Parker*, 132 S. Ct. at 2155. In reconsidering our decision in the instant case, we recognize that we applied the "substantial defense"

16

standard used in this Circuit, *Walker I*, 656 F.3d at 321, and this was inappropriate in light of *Parker*, 132 S. Ct. at 2155. However, recognizing that the Supreme Court has rejected the application of the Sixth Circuit substantial defense standard within the context of habeas review of state court decisions, upon further consideration we find that the traditional Supreme Court standard as articulated in *Strickland* itself justifies granting the writ in the case before us.

Unlike in *Parker*, where the jury had considered the claim of EED, here the claim of insanity was never presented to the jury. Accordingly, rather than the twice-deferential standard accorded to jury determinations, we only defer to the reasonable conclusions of the state court. *See Parker*, 132 S. Ct. at 2152–53. And these determinations were patently unreasonable. If anything, the reasoning of *Parker* strengthens our belief that the Michigan court's decision was unreasonable, because the state appellate court usurped the fact-finding province of the jury, which was never permitted to consider Petitioner's claim of legal insanity. *See id.* at 2152. While we are mindful of our obligation to uphold all reasonable jury determinations of what conclusions should be drawn from the evidence presented at trial, *see, e.g.*, *Cavazos v. Smith*, 565 U.S. —, 132 S. Ct. 2, 3–4 (2011) (*per curiam*), at Petitioner's trial, no evidence was presented. It is precisely this inability to have a jury consider the defense, because of the ineffective assistance of his counsel, and the prejudice resulting therefrom, that entitles Petitioner to the writ.

In *Parker*, the Kentucky courts had a full record with which to evaluate the sufficiency of the proof of EED in the context of a jury verdict. But there is no such record in the instant case for the Michigan Court of Appeals to have evaluated. The only findings, anywhere in the record, with respect to Petitioner's mental state, were at the *Ginther* hearing. And those findings of fact appear

to support a conclusion that Petitioner suffered *Strickland* prejudice when his attorney failed to present an insanity defense. In *Parker*, there was evidence of rational behavior and premeditation that could have precluded a finding of EED, and the Supreme Court determined that it was not unreasonable for the Kentucky appellate court to find that a properly instructed jury's finding meant that the state had met its burden. In the instant case, the Michigan Court of Appeals selectively used facts, such as Petitioner's attempt to hide the gun used in the killing, that had never been examined in the context of Petitioner's long history of mental illness. Given the Michigan Court of Appeals' finding of deficient performance, and given the Supreme Court's statement of the reasonable probability standard, this was an unreasonable conclusion to draw.

Accordingly, upon reconsideration, we find that the Supreme Court's decision in *Parker v. Matthews* does not alter the result in our prior decision in this case. While we are mindful of the Supreme Court's admonition to consult only precedent from the Supreme Court as the basis for clearly established law, Petitioner's claim is based on his right to effective counsel as established in *Strickland*, and we have no doubt that this constitutes clearly established law as determined by the Supreme Court. We further find that because the properly instructed jury in the *Parker* case was presented with the evidence of EED, there was a reasonable factual basis for the state court's decision in *Parker* that is entirely absent in the instant case. In light of that key distinction, the primary application of the *Parker* decision must be to limit this Court's analysis to clearly established law as determined by the Supreme Court. Having analyzed the case on those terms, we find that the writ should issue.

## CONCLUSION

The district court erred in failing to grant Petitioner a writ of habeas corpus based on the ineffective assistance of counsel. Therefore, we **REVERSE** the decision of the district court, **GRANT** Walker's petition for a writ of habeas corpus, and order that Walker be released from custody unless the State of Michigan commences a new trial within 180 days of the date of this order.

**COOK, Circuit Judge, dissenting.** Though addressing the problem highlighted in *Parker v. Matthews*, 132 S. Ct. 2148 (2012), the court's revised opinion persists with many aspects questioned by my prior dissent. I therefore stand by that earlier dissent, adding the following observations about the new opinion.

The majority retreats from its earlier criticism of the state court's interpretation of Michigan's legal insanity statute. *Cf. Walker I*, 656 F.3d at 320–21 (concluding that "[t]he state appeals court's determination, based on its own assessment that the 'evidence that defendant had the consciousness of guilt' outweighed all evidence regarding Walker's mental illness, is a thinly veiled and unsupportable conclusion that it simply did not believe that Walker was legally insane"). It likewise eschews its sua sponte, independent rationale for habeas relief under § 2254(d)(2). *Id.* at 319 (finding that the Michigan Court of Appeals unreasonably determined facts in light of the evidence ). In its place, however, the court now claims that the state court failed to apply the correct *Strickland* rule, denying in a footnote that the state court even recited the correct standard. *See supra* n.4.

This reasoning departs from the court's finding in *Walker I* that the state court had "properly stat[ed] the *Strickland* standard for prejudice," 656 F.3d at 320, and, more importantly, overlooks the fact that the state court did. *Compare People v. Walker*, 2005 WL 657727, at *1 n.6 (citing state-court authority in its discussion of *Strickland*, and defining prejudice as "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different"), *with Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different.").
In this battle of the footnotes, the state court has the upper hand.

The above portion of the state court's opinion correctly stated the *Strickland* standard, and its conclusion also utilized *Strickland*'s "reasonable probability" language. *People v. Walker*, 2005 WL 657727, at *2 (finding that "there is not a reasonable probability that defendant had a likely chance of acquittal"). Given this context, the fact that the state court twice referred to a "likely chance of acquittal" in its application of the rule—without corresponding language excluding other outcomes—does not reflect an attempt to raise *Strickland*'s prejudice bar. *Cf. Cullen v. Pinholster*, 131 S. Ct. 1388, 1404 (2011) (clarifying that a "reasonable probability . . . sufficient to undermine confidence in the outcome," under *Strickland*, "requires a 'substantial,' not just 'conceivable,' likelihood of a different result" (citation omitted)); *Knowles v. Mirzayance*, 556 U.S. 111, 127–28 (2009) (reversing habeas relief and rejecting *Strickland* claim where petitioner failed to show a "'reasonable probability' that he would have *prevailed* on his insanity defense had he pursued it" (emphasis added)).

Nor does the state court's characterization of *Strickland* prejudice as ineffective assistance that "was so prejudicial to [the defendant] that he was denied a fair trial," *People v. Walker*, 2005 WL 657727, at *1 n.6; it closely tracks *Strickland*'s description of the concept, *see Strickland*, 466 U.S. at 687 (observing that prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable"). As the Supreme Court has reminded us, AEDPA requires that we give state-court decisions "the benefit of the doubt" and "presum[e] that state courts know and follow the law" unless shown otherwise. *Holland v. Jackson*,

542 U.S. 649, 654–55 (2004) (citations omitted). Today's majority does neither. *See id.* (reversing this court's grant of habeas relief and rejecting *Strickland* claim, where the state court properly recited the *Strickland* prejudice standard, and stray references to a preponderance-of-the-evidence standard did not evince a departure from that standard).

Compounding the error, the majority dismisses the state court's prejudice analysis as "conclusory," and seems to fault the state court for expressing doubts about its previous ineffective-assistance finding. *See People v. Walker*, 2005 WL 657727, at *1 (concluding that "defendant failed to show that he had a meritorious insanity defense, and thus, failed to show that counsel was ineffective for failing to present such a defense"). As explained in the *Walker I* dissent, the state court weighed petitioner's new mitigating evidence against Dr. Fields's contrary reports and defendant's multiple attempts to conceal the murder, ultimately agreeing with defense counsel that petitioner's insanity defense would be unavailing. That conclusion is not objectively unreasonable; fairminded jurists could (and did) disagree on this point. In light of this analysis, I fail to see how the state court's reservations on the ineffectiveness issue elevates this case to an "extreme malfunction[] in the state criminal justice system[]" warranting relief under AEDPA. *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citation omitted).

I respectfully dissent.